AMERICAN IMPORTS, INC. v. G. E. EMPLOYEES WESTERN REGION
FEDERAL CREDIT UNION and CAROLYN J. McQUEEN

No. 775SC784

(Filed 11 July 1978)

1. **Rules of Civil Procedure § 37— failure to appear for deposition—sanctions— willfulness**

There is no requirement that the court find that the failure to appear for a deposition was willful before the court may impose sanctions for failure to appear. G.S. 1A-1, Rule 37(d).

2. **Rules of Civil Procedure § 37— failure to appear for deposition—default judgment**

The trial court did not abuse its discretion in granting defendant credit union judgment on its cross-claim against the individual defendant as a sanction for the failure of the individual defendant to appear for a deposition to be taken by the credit union where the individual defendant was given proper notice of the deposition, neither the individual defendant nor her counsel appeared at the sanction hearing, and no explanation for her failure to appear was ever before the court.

3. **Uniform Commercial Code § 20— acceptance of automobile—action for purchase price—peremptory instructions**

There was no question as to whether defendant accepted an automobile sold to her by plaintiff, and the trial court properly gave peremptory instructions to the jury in plaintiff's favor in an action to recover the purchase price, where plaintiff showed the sale and delivery of the automobile at an agreed price, and defendant admitted that she took the automobile, executed the papers connected with the sale, and later refused to pay the purchase price.

4. **Automobiles § 6.5— mileage—insufficient evidence of fraud**

No question of fraud in the sale of an automobile because of its mileage was raised where defendant's evidence showed only that the odometer was not working properly shortly after the sale, there was no evidence that the mileage figure shown on the odometer was not the actual mileage, and plaintiff never represented that the automobile had fewer miles on it.

5. **Automobiles § 6.2; Uniform Commercial Code § 24— revocation of acceptance of automobile—odometer not working—broken fan belt**

An automobile buyer had no right under G.S. 25-2-608 to revoke her acceptance of the automobile because (1) the odometer was not working when the car was delivered to her or (2) the fan belt broke two days after the delivery, since there was no evidence that the mileage shown on the odometer was not the actual mileage or that she was prevented from discovery of the actual mileage by the seller's assurances, and since the breaking of the fan belt was insufficient to show such nonconformity as would allow her to revoke her acceptance.

**6. Automobiles § 6.5— damages under Vehicle Mileage Act**

Defendant was not entitled to damages under the Vehicle Mileage Act, G.S. 20-340 *et seq.*, where there was only a technical failure to comply with the Act in that the mileage statement was not completely filled out, defendant offered no evidence of an intent to defraud, and there was no evidence that the mileage shown on the odometer was incorrect.

APPEAL by defendant McQueen from *Rouse, Judge.* Judgment entered 16 May 1977 in Superior Court, NEW HANOVER County. Heard in the Court of Appeals 22 June 1978.

Plaintiff is a dealer in Fiat cars. Defendant McQueen attempted to buy a new Fiat from plaintiff in 1975 with financing through defendant G.E. Employees Western Region Credit Union. After a disagreement with plaintiff over the car, defendants stopped payment on their checks. Plaintiff brought this action for the purchase price. Defendant McQueen denied her liability for the purchase price and counterclaimed for damages for violations of the State's unfair trade practices law and of the vehicle mileage act. Defendant Credit Union also denied liability for the purchase price and further cross-claimed against McQueen on the promissory note she executed to them as part of the loan transaction.

McQueen failed to attend a deposition properly scheduled and of which notice was given by Credit Union for the taking of her oral testimony. Neither she nor her attorney appeared before the court for a hearing on the proper sanctions to be applied. The court made findings of fact and ordered that the Credit Union be granted judgment on its cross-claim against McQueen and that it recover $200.00 in attorneys fees and expenses from her.

In this posture the case came on for trial where all parties presented evidence. The evidence tended to show that McQueen negotiated with plaintiff for the sale of a 1975 Fiat Spider with air conditioning, luggage rack and other options at a price of $6,591.00. Plaintiff gave her an estimate to this effect which she took to the Credit Union where she arranged to finance $5,272.80 or 80% of the total cost. The deal included a $500.00 trade in allowance on McQueen's Oldsmobile. McQueen took possession of the Fiat on 21 November 1975, paying plaintiff with checks totaling $5,495.80 and promising to deliver the Oldsmobile for trade in the next week. At that time the car was not equipped with air conditioning or luggage rack and the bill of sale showed that the

car cost $5,995.80. Two days later the car overheated. McQueen had also discovered that neither the speedometer nor the odometer functioned properly. Plaintiff towed the car to its garage, replaced a broken fan belt, and tightened a nut on the speedometer which also controlled the odometer. After the above repairs were made, McQueen said that she wanted a new car and left the Fait on plaintiff's premises.

The court instructed the jury that defendant McQueen had offered no evidence which would constitute a defense in the action and that if it believed the plaintiff's evidence it should find that McQueen owed plaintiff $5,995.80, the purchase price of the car. The jury was also instructed that if it believed the evidence it should find that Credit Union owed plaintiff $5,272.80, the amount of its check on which payment had been stopped. The court also directed verdicts against McQueen on each of her statutory counterclaims on the grounds that she had offered no evidence in support of them. The jury returned the verdicts as directed, and judgment was entered accordingly.

*Marshall, Williams, Gorham & Brawley, by Lonnie B. Williams and Ronald H. Woodruff, for plaintiff appellee, American Imports, Inc.; Rountree & Newton, by William B. Harris III, for defendant appellee, G.E. Employees Western Region Federal Credit Union.*

*Cherry and Wall, by Frank D. Cherry, for defendant appellant, Carolyn J. McQueen.*

VAUGHN, Judge.

[1, 2]  Defendant McQueen first assigns as error the court's imposition of sanctions for her failure to appear for her deposition. This question is properly reviewed on appeal of the entire case. While a default judgment on a cross-claim may be reviewed immediately under G.S. 1-277, it is not a "final judgment" until all claims made in the action are adjudicated, unless the court makes findings pursuant to G.S. 1A-1, Rule 54(b), that there is no just reason for delay and the severed claim should be granted final judgment. *Hamilton v. Hamilton*, No. 7722DC511, filed 20 June 1978. Nevertheless, there is no merit in McQueen's position. G.S. 1A-1, Rule 37(d) allows a judge to default a claim as a sanction for failure to appear for a deposition after having been given proper

notice. The imposition of sanctions under Rule 37(d) is in the sound discretion of the trial judge. *Hammer v. Allison,* 20 N.C. App. 623, 202 S.E. 2d 307 (1974), *cert. den.,* 285 N.C. 233, 204 S.E. 2d 23. Although defendant McQueen contends that the court must find that her refusal to attend was willful before it imposes sanctions, the language of G.S. 1A-1, Rule 37(d) requires no such finding. We note that the cases cited by plaintiff date from a time when the Federal Rules of Civil Procedure did require that the offense be willful before imposition of sanctions. *See* 4A Moore's Federal Practice, § 37.05. McQueen can show no abuse of the court's discretion. She was given proper notice of the taking of her deposition. She did not notify the Credit Union's counsel that she would not attend until the day scheduled for the deposition. Moreover, neither she nor her counsel appeared at the hearing on the imposition of sanctions, and no explanation for her behavior was ever before the court.

> "Imposition of sanctions that are directed to the outcome of the case, such as dismissals, default judgments, or preclusion orders, are reviewed on appeal from final judgment, and while the standard of review is often stated to be abuse of discretion, the most drastic penalties, dismissal or default, are examined in the light of the general purpose of the Rules to encourage trial on the merits." 4A Moore's Federal Practice, §§ 37.08 at 37-112,13.

With all these factors in mind, we find that there was no abuse of discretion in entering judgment against McQueen on her note to the Credit Union.

[3]   McQueen also assigns as error the giving of peremptory instructions to the jury in plaintiff's favor on the action for the purchase price, contending that she raised questions of defenses under G.S. 25-1-103 and G.S. 25-2-607 which should properly have been considered by the jury. Plaintiff's proof of the sale and delivery of the car at an agreed price and defendant McQueen's admission that she took the car, executed the papers connected with the sale and then refused to pay the purchase price makes out a case entitling plaintiff to recover the amount due on the purchase price, nothing else appearing. *See* G.S. 25-2-301; *Stevens Co. v. Mooneyham,* 211 N.C. 291, 189 S.E. 780 (1937). We cannot agree with McQueen that there is any question about whether she

accepted the car. Her actions in delivering the checks, signing all the paperwork, and taking delivery of the car were so inconsistent with the seller's ownership as to preclude any other interpretation. G.S. 25-2-606. For these reasons it was not error to give the jury peremptory instructions in plaintiff's favor.

[4, 5]  McQueen also contends that her evidence raised questions both of fraud and of proper revocation of acceptance. It is clear that the evidence does not show any material misrepresentation on the part of plaintiff which might reasonably have been calculated to deceive McQueen. The mileage figure was clearly on the odometer, and plaintiff never represented that the car had fewer miles on it. In the absence of a misrepresentation, there can be no actionable fraud. *Ragsdale v. Kennedy*, 286 N.C. 130, 209 S.E. 2d 494 (1974). Nor does G.S. 25-2-608 give McQueen a right to revoke her earlier acceptance. The right to revoke acceptance of the car arises only if it was accepted.

> "(a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or

> (b) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance *or* by the seller's assurances." G.S. 25-2-608(1).

There was no evidence that the car was accepted with any knowledge of a nonconformity. There is no evidence that the mileage as shown on the odometer was not the actual mileage or that she was prevented from discovery by the seller. *See Performance Motors, Inc. v. Allen*, 280 N.C. 385, 186 S.E. 2d 161 (1972). That two days after the sale the fan belt broke is insufficient to show such nonconformity as would allow her to revoke her acceptance. Nor can plaintiff show that she did not discover the mileage of the car due to the difficulty of discovery or due to the seller's assurances. She does not, therefore, qualify for relief under G.S. 25-2-608.

[6]  McQueen also contends that she offered evidence tending to show that defendant failed to give her a fully completed vehicle mileage statement in compliance with the Vehicle Mileage Act, G.S. 20-340 *et seq.* It is true that McQueen testified that the statement was in blank when she signed it. (She did not offer her copy at trial.) Plaintiff's copy was introduced at trial and showed

the mileage figure as being the same as the figure on the odometer when the sale was made. Plaintiff's copy was incomplete, however, in other respects. Nevertheless, there must be more than a technical failure to comply in order to give rise to an action for damages under the act. The noncompliance must be accompanied by an intent to defraud. McQueen has offered no evidence of such intent. There is nothing to indicate that the mileage shown on the odometer was incorrect or that there was any other misrepresentation.

We have considered all of McQueen's arguments and conclude that she has failed to show prejudicial error.

No error.

Judges MORRIS and MARTIN concur.