W. REID WRIGHT v. O'NEAL MOTORS, INC. AND CHRYSLER CORPORATION

No. 8110DC715

(Filed 4 May 1982)

1. **Uniform Commercial Code § 23— revocation of acceptance of automobile— summary judgment for dealer improper**

   Where plaintiff instituted an action to revoke his acceptance, pursuant to G.S. 25-2-608, of a new automobile which he purchased from defendant car dealer, the trial court erred in entering summary judgment for the dealer since plaintiff's allegations in his complaint raised genuine issues of material fact as to substantial impairment of value and defendant failed to meet its burden of (1) proving that an essential element of plaintiff's claim was nonexistent, or (2) showing through discovery that plaintiff cannot produce evidence to support an essential element of his claim.

2. **Uniform Commercial Code § 23— revocation of acceptance of automobile— summary judgment for manufacturer proper**

   Under G.S. 25-2-608, revocation of acceptance is a remedy available to the buyer only against the seller; therefore, where plaintiff bought an automobile of which he intended to revoke acceptance from a dealer, summary judgment for the manufacturer was proper.

APPEAL by plaintiff from *Barnett, Judge.* Judgment entered 21 April 1981 in District Court, WAKE County. Heard in the Court of Appeals 10 March 1982.

Plaintiff instituted this action to revoke his acceptance, pursuant to G.S. 25-2-608, of a new Reliant K automobile which he purchased from defendant O'Neal Motors, Inc., (hereinafter O'Neal) a dealer for defendant Chrysler Corporation (hereinafter Chrysler). Plaintiff alleged that the automobile had such defects as to substantially impair its value to plaintiff; he gave timely notice of revocation to defendant; and that O'Neal refused to revoke the sale. Defendant O'Neal denied that the defects in plaintiff's automobile substantially impaired the car's value, asserted that the defects had been removed, and counterclaimed against plaintiff for storage costs and the rental value of the car. Defendant O'Neal also cross-claimed against defendant Chrysler, alleging that Chrysler was responsible for any defects or breaches of warranties as to plaintiff's car. Both defendants moved for summary judgment on plaintiff's claim against them. After reviewing plaintiff's verified complaint and affidavits submitted by each party, Judge Barnett granted defendants' G.S. 1A-1, Rule

56 motions for summary judgment. Plaintiff has appealed from those judgments. Additional facts will be discussed in the body of the opinion.

*Law Offices of Thomas J. Bolch, by S. Allen Patterson, II, for plaintiff-appellant.*

*Johnson, Gamble & Shearon, by Richard J. Vinegar, for defendant-appellee, O'Neal Motors, Inc.*

*Johnson, Patterson, Dilthey & Clay, by Robert W. Sumner, for defendant-appellee, Chrysler Corporation.*

WELLS, Judge.

The question presented by this appeal is whether the trial court properly allowed defendants' motions for summary judgment.

I. SUMMARY JUDGMENT AS TO DEFENDANT O'NEAL MOTORS, INC.

In plaintiff's verified complaint, he alleged that on 15 November 1980, he purchased, for cash, a new Plymouth "Reliant K" automobile from O'Neal Motors, and that:

. . .

II. Plaintiff accepted the automobile in the belief that the automobile conformed to the contract of sale. On November 16, 1980, plaintiff discovered that the automobile did not conform to the contract inasmuch as plaintiff experienced a roaring noise while driving as well as excessive vibration, fluid leaks, poor gas mileage, a dead battery, the car would pull to the right and other serious defects. Plaintiff could not have known of such defects before that time because of the difficulty of discovering such defects in a brand new automobile.

III. The defects in the automobile severely and substantially impaired its value to plaintiff inasmuch as plaintiff intended to use the "Reliant K" automobile as a means of reliable transportation and since the automobile has spent twelve days since the purchase date in defendant's garage, plaintiff can not use the automobile in its present condition.

IV. On December 19, 1980, plaintiff notified defendant that the automobile was not acceptable to him and that he was

revoking his said acceptance thereof. Plaintiff returned the automobile the [sic] defendant's lot on the same day and demanded that defendant return the purchase price of the "Reliant K" and pay plaintiff all incidental costs.

V. At the time plaintiff gave notice of revocation to defendant, the automobile was in substantially the same condition as when it was delivered to plaintiff, and it has not been harmed in any manner by plaintiff.

. . .

Plaintiff's right to revoke his purchase of the new Reliant K automobile must be determined according to the pertinent provisions of the Uniform Commercial Code contained in Chapter 25 of the General Statutes. G.S. 25-2-608 provides as follows:

§ 25-2-608. Revocation of acceptance in whole or in part.—(1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it

(a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or

(b) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

[1] The threshold question in this appeal is whether there is a clearly recognizable level or degree of nonconformity which plaintiff must experience in order to establish that the nonconformities he has alleged would substantially impair the value of the car to him. Our review of pertinent authorities and cases discloses a generally recognized two-fold test on the question of substantiality of impairment: one, a subjective standard measured by the

buyer's needs, circumstances, and reaction to the nonconformity, and two: an objective standard measured by such considerations as market or commercial value, reliability, safety, and usefulness for purposes for which similar goods are generally used, including efficiency of operation, cost of repair of nonconformities, and the seller's ability or willingness to seasonably cure the nonconformity. *See* Annot., 98 A.L.R. 3d 1183; White & Summers, *Uniform Commercial Code*, Sec. 8-3 (2nd ed. 1980); Phillips, "Revocation of Acceptance and the Consumer Buyer," 75 Com. L.J. 354 (1970); Priest, "Breach and Remedy for the Tender of Nonconforming Goods Under the UCC: An Economic Approach," 91 Harvard L. Rev. 960 (1978); 2 Anderson, *Uniform Commercial Code*, Sec. 2-608:13 (2nd ed. 1971).

Case law decisions from other jurisdictions disclose a wide variety of factual situations involving attempted revocation of new automobile purchases for nonconformity. There is simply no majority view of what constitutes substantial impairment of value. We have found scant North Carolina authority bearing on the central issue in this case. In *Imports, Inc. v. Credit Union*, 37 N.C. App. 121, 245 S.E. 2d 798 (1978), defendant buyer attempted to revoke on evidence which showed that defendant negotiated with the dealer for a new, 1975 Fiat equipped with air conditioning and luggage rack at a price of $6,591.00. When defendant accepted delivery for a price of $5,995.80, the car was not equipped with air conditioning or a luggage rack. After using the car for two days, defendant returned it to plaintiff seller because it overheated and the speedometer and odometer malfunctioned. Plaintiff seller towed the car to its garage, replaced a broken fan belt and tightened a nut on the speedometer — odometer. After these repairs were made, defendant buyer told seller she wanted a new car and left the Fiat on seller's premises. The trial court instructed the jury that defendant buyer had offered no evidence which would constitute a defense in the action, and directed a verdict on the issue of revocation. This court's opinion seems to emphasize the question of misrepresentation and in that respect is helpful in the resolution of the case now before us. We quote:

> McQueen also contends that her evidence raised questions both of fraud and of proper revocation of acceptance. It is clear that the evidence does not show any material misrepresentation on the part of plaintiff which might

reasonably have been calculated to deceive McQueen. The mileage figure was clearly on the odometer, and plaintiff never represented that the car had fewer miles on it. In the absence of a misrepresentation, there can be no actionable fraud. *Ragsdale v. Kennedy*, 286 N.C. 130, 209 S.E. 2d 494 (1974). Nor does G.S. 25-2-608 give McQueen a right to revoke her earlier acceptance. The right to revoke acceptance of the car arises only if it was accepted.

"(a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or

(b) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance *or* by the seller's assurances." G.S. 25-2-608(1).

There was no evidence that the car was accepted with any knowledge of a nonconformity. There is no evidence that the mileage as shown on the odometer was not the actual mileage or that she was prevented from discovery by the seller. *See Performance Motors, Inc. v. Allen*, 280 N.C. 385, 186 S.E. 2d 161 (1972). That two days after the sale the fan belt broke is insufficient to show such nonconformity as would allow her to revoke her acceptance. Nor can plaintiff show that she did not discover the mileage of the car due to the difficulty of discovery or due to the seller's assurances. She does not, therefore, qualify for relief under G.S. 25-2-608.

In *Motors, Inc. v. Allen, supra*, cited by this court in *Imports, supra*, our Supreme Court held that defendant buyer's overwhelming evidence of nonconformity would permit a jury to find that defendant initially accepted the mobile home on the reasonable assumption that plaintiff seller would correct the nonconforming defects and subsequently revoked her acceptance by reason of plaintiff's failure to do so. For a case of similar import, *see Davis v. Enterprises and Davis v. Mobile Homes*, 23 N.C. App. 581, 209 S.E. 2d 824 (1974), *later app.* 28 N.C. App. 13, 220 S.E. 2d 802 (1975), *disc. rev. denied*, 289 N.C. 613, 223 S.E. 2d 391 (1976). Although not involving precisely the question of substantial impairment of value, *Manufacturing Co. v. Logan Tontz Co.*, 40 N.C. App. 496, 253 S.E. 2d 282 (1979), *disc. rev. denied*, 297 N.C. 454, 256 S.E. 2d 806 (1979), contains an excellent discussion

of general principles of commercial law as they apply to attempted revocation under G.S. 25-2-608.

In the light of the authorities and cases we have discussed, we are persuaded that plaintiff's allegations in his complaint raise genuine issues of material fact as to substantial impairment of value. Plaintiff's complaint having stated a cause of action for revocation, defendant O'Neal, by its motion for summary judgment, assumed the burden of (1) proving that an essential element of plaintiff's claim is nonexistent, or (2) showing through discovery that plaintiff cannot produce evidence to support an essential element of his claim, *Lowe v. Bradford*, 305 N.C. 366, 289 S.E. 2d 363 (1982); i.e., that there were no genuine issues of material fact remaining to be tried and that it was therefore entitled to judgment as a matter of law. *Lowe*, supra. An issue is "genuine" if it can be proven by substantial evidence and a fact is "material" if it would constitute or irrevocably establish any material element of a claim or defense. *Lowe*, supra. The next question to be addressed, therefore, is whether defendant O'Neal has met its burden, for if it has not, summary judgment was not properly entered for it. *Lowe*, supra.

First, we note that O'Neal did not resort to discovery in this case, and hence did not attempt to explore the subjective effect of the alleged nonconformities on this plaintiff. While this is a burden plaintiff will have at trial, i.e., to show how the alleged nonconformities substantially impaired the value of the car *to him*, as measured by his needs, circumstances, etc., on O'Neal's motion for summary judgment, this was O'Neal's burden. O'Neal instead relied entirely on the affidavits of its employees, who thereby stated their version of the events and circumstances leading to plaintiff's attempted revocation. It would appear, therefore, that O'Neal has attacked plaintiff's cause on only one front, i.e., the objective standards we discussed previously.

In one affidavit, defendant O'Neal's General Manager, William R. O'Neal, stated that when plaintiff bought the car, plaintiff was notified prior to accepting delivery that plaintiff could test drive the car and otherwise inspect it to his satisfaction; that plaintiff stated that it would not be necessary for him to test drive the car and insisted that he be allowed to take the car "right out of the showroom", and that no representation was

made to plaintiff as to the gasoline mileage he could expect to obtain from the car. Defendant O'Neal argues that plaintiff's failure to inspect the car before purchase is a complete defense on the issue of defects which might have been discovered by a reasonable inspection at time of delivery. We do not agree. The provisions of the statute make it clear that acceptance of goods without discovery of nonconformities must be judged in the light of whether such acceptance "was *reasonably* induced either by the difficulty of discovery before acceptance *or* by the seller's assurances." G.S. 25-2-608(1)(b). By his own affidavit, plaintiff stated that "at no time was I told that I could test drive the car nor was I given the opportunity to test drive the car before I took delivery." These divergent versions of what took place at the time of sale and delivery show disputed issues of fact as to plaintiff's opportunity to inspect and his response to such opportunity. In addition, plaintiff's affidavit states that defendant O'Neal's salesman represented to plaintiff that he could expect to get gas mileage of 26 miles per gallon in the city and 36 miles per gallon on the highway, whereas O'Neal stated in his affidavit that no expected mileage representation was made to plaintiff, except that his mileage would differ from the E.P.A. rating, according to driving conditions, etc. When defendant O'Neal later tested the car, it averaged only 14 miles per gallon overall. These disputed facts leave an issue as to whether plaintiff could have reasonably discovered the gas mileage nonconformity before acceptance.

Through the affidavit of its service manager, Norman H. Braxton, defendant O'Neal asserted that it seasonably cured all of the defects brought to its attention by plaintiff, a defense to attempted revocation pursuant to G.S. 25-2-608(1)(a). *See* G.S. 25-2-508; G.S. 25-2-608(3); *Anderson,* supra, Sec. 2-608:14. While Braxton's affidavit does assert seasonable cure, it admits that between 15 November 1980, the date of purchase, and 19 December 1980, the date of attempted revocation, a total of approximately 34 days, plaintiff possessed the car for only twenty days. As previously noted, plaintiff asserted that during this time period, the car was in O'Neal's garage for twelve days. Such significant nonavailability of the car for plaintiff's use relates not only to the question of substantial impairment of value, but also to the question of whether defendant seasonably cured such nonconformities as substantially impaired the value of the car to plaintiff.

The materials before the trial court show that there are issues in this case which must be resolved by the trier of facts and that defendant O'Neal has not met its burden of showing that it is entitled to judgment as a matter of law. *See Lowe*, supra, *Easter v. Hospital*, 303 N.C. 303, 278 S.E. 2d 253 (1981); *Vassey v. Burch*, 301 N.C. 68, 269 S.E. 2d 137 (1980). Summary judgment for defendant O'Neal was thus improperly granted, and the judgment is reversed.

II. SUMMARY JUDGMENT AS TO DEFENDANT CHRYSLER CORPORATION.

[2]  G.S. 25-2-608, quoted *infra*, refers to the parties to a revocation of acceptance action as "buyer" and "seller". Plaintiff did not allege that he purchased his car from defendant Chrysler Corp., nor that defendant O'Neal was Chrysler's agent. Since plaintiff purchased the Reliant K for cash, neither was there a financing agreement between plaintiff and Chrysler. Finally, plaintiff did not allege that he purchased the car because of advertising or warranties flowing directly from Chrysler to plaintiff.

The majority rule is that revocation of acceptance is a remedy available to the buyer only against the seller, and that the manufacturer, in the absence of a contractual relationship with the ultimate consumer, is not a seller. *See Voytovich v. Bangor Punta Operations, Inc.*, 494 F. 2d 1208, 15 U.C.C. Rep. 45 (6th Cir. 1974); *Conte v. Dwan Lincoln - Mercury, Inc.*, 172 Ct. 112, 374 A. 2d 144, 20 U.C.C. Rep. 899 (1976); *but see Durfee v. Rod Baxter Imports, Inc.*, 262 N.W. 2d 349, 22 U.C.C. Rep. 945 (Minn. 1977); *note*, 63 Minn. L.Rev. 665 (1979). We hold with the majority, that Chrysler Corp., having no privity of contract with plaintiff in plaintiff's purchase from O'Neal, is not a "seller" under G.S. 25-2-608, and that plaintiff cannot revoke his acceptance of the car as to defendant Chrysler Corporation. We further hold that since an essential element of plaintiff's cause of action is lacking, *Lowe*, supra, defendant Chrysler was entitled to judgment as a matter of law. This grant of summary judgment is therefore affirmed.

It is obvious from the result reached below that the trial court considered defendant O'Neal's cross-action against defendant Chrysler to be moot. We note that the decision we have reached will have the effect of reinstituting defendant O'Neal's cross-action against defendant Chrysler.

Summary judgment as to defendant O'Neal Motors, Inc. is

Reversed.

Summary judgment as to defendant Chrysler Corporation is

Affirmed.

Judges HILL and BECTON concur.