LAURIE O. SEGREST, ADMINISTRATOR OF THE ESTATE OF AMY DOLAN SEGREST, PLAINTIFF v. MICHAEL T. GILLETTE, KATHRYN N. GREENHOOT, SOUTHEAST ANESTHESIA ASSOCIATES, P.A., CHARLOTTE MEMORIAL HOSPITAL AND MEDICAL CENTER, INC., AND CHARLOTTE MECKLEN-BURG HOSPITAL AUTHORITY, DEFENDANTS

No. 8926SC98

(Filed 5 December 1989)

1. **Physicians, Surgeons and Allied Professions § 15.1 (NCI3d) — wrongful death — medical malpractice — death certificate and testimony of medical examiner excluded — no error**

The trial court did not err in a wrongful death action arising from alleged medical malpractice by excluding the death certificate and the testimony of the medical examiner where the medical examiner testified on voir dire that he did not conduct any part of the autopsy on the deceased and was not in a position to give an opinion on the cause of death.

**Am Jur 2d, Death §§ 462, 546.**

2. **Physicians, Surgeons and Allied Professions § 15 (NCI3d) — lab slip — erroneously admitted without limiting instruction — prejudicial error**

There was prejudicial error in a wrongful death action arising from alleged medical malpractice where the trial court admitted a lab slip without a limiting instruction. Several hours before the deceased's death, one of her doctors requested an Epstein-Barr virus test, which had to be performed at another hospital; none of the material available at the time of trial specified which Epstein-Barr test was requested or performed; the deceased died in early January 1983; a doctor affiliated with defendant asked a lab technician to obtain further information on the test results some time after November 1985; the lab technician called the hospital that performed the test and wrote out the lab slip that became known as the "IgM slip"; and that slip specified that Presbyterian Hospital had

SEGREST v. GILLETTE

[96 N.C. App. 435 (1989)]

performed an IgM test and that the results were positive. The IgM slip did not satisfy the requirements of N.C.G.S. § 8C-1, Rule 803(6), in that this slip was not made at or near the time of the test itself; the slip could serve as the basis of expert opinion testimony under N.C.G.S. § 8C-1, Rule 703, but the court erred in admitting the slip without an instruction limiting its use to providing the basis for the experts' opinions.

**Am Jur 2d, Hospitals and Asylums § 43.**

3. **Appeal and Error § 24.1 (NCI3d)— wrongful death—medical malpractice—cross-assignment of error—not an alternate basis for verdict**

In a wrongful death action arising from alleged medical malpractice, the Court of Appeals did not consider a cross-assignment of error to the trial court's refusal to instruct the jury about allegedly improper statements by plaintiff's counsel in closing arguments where the refusal to give the requested instruction did not deprive the defendants of an alternate basis in law for the verdict in their favor. N.C. Rules of Appellate Procedure, Rule 10(d).

**Am Jur 2d, Physicians, Surgeons, and Other Healers § 363.**

4. **Bills of Discovery § 6 (NCI3d); Rules of Civil Procedure § 37 (NCI3d)— wrongful death action—failure to timely answer interrogatory—sanctions—no abuse of discretion**

The trial court did not abuse its discretion in a wrongful death action arising from alleged medical malpractice by limiting the number of expert witnesses defendants could use at trial where plaintiff served an interrogatory upon all defendants seeking information about the expert witnesses defendants expected to testify just over two months before the deadline set by the trial court for completion of discovery; defendants failed to answer within the thirty days provided by N.C.G.S. § 1A-1, Rule 33; plaintiffs moved pursuant to N.C.G.S. § 1A-1, Rule 37, for sanctions; defendants then responded to the interrogatory; and the trial judge granted plaintiff's motion for sanctions. Defendants did not argue that their failure to reply was involuntary or beyond their control and offered no explanation for their failure to respond.

**Am Jur 2d, Depositions and Discovery §§ 70, 209, 357; Physicians, Surgeons, and Other Healers § 357.**

SEGREST v. GILLETTE

[96 N.C. App. 435 (1989)]

APPEAL by plaintiff from judgment entered 29 March 1988 by *Judge James U. Downs* in MECKLENBURG County Superior Court. Heard in the Court of Appeals 18 September 1989.

This is a wrongful death action based upon alleged medical malpractice brought by the administrator of Amy Segrest's estate against Southeast Anesthesia Associates, P.A., two of its member anesthesiologists, Michael T. Gillette and Kathryn N. Greenhoot, and Charlotte Memorial Hospital and Medical Center, Inc. and Charlotte Mecklenburg Hospital Authority. On 22 December 1982, Amy Segrest, age seven, was admitted to Charlotte Memorial Hospital for treatment of a fourth degree burn on her ankle resulting from a mishap on a moped. Over the course of the next three weeks, several surgeons performed five surgical procedures on Amy. The anesthesia administered for the first four procedures included Halothane, while Ethrane was administered for the fifth. Evidence at trial showed that over the course of her hospital stay, Amy experienced the following symptoms: vomiting, increased blood pressure and temperature, mouth ulcers, decreased appetite, a yellow tint to her skin, and dark urine. In addition to the plastic surgeons operating on her ankle and the anesthesiologists administering the anesthesia for those surgeries, Amy was attended by several physicians from Eastover Pediatric Clinic, including a specialist in infectious diseases. These other physicians were consulted regarding her symptoms. Following the fifth operation, Amy's condition deteriorated. Her doctors conducted various tests, including a test for Epstein-Barr virus (mononucleosis) in an attempt to determine the cause of her illness. Amy died at the hospital on 24 January 1983. Additional pertinent facts are set out in the opinion.

Plaintiff instituted this action against defendants on 23 January 1985. The case was tried to a jury in Mecklenburg County Superior Court and the jury returned a verdict in favor of the defendants. From a judgment entered in accordance with that verdict, plaintiff appeals and defendants Gillette, Greenhoot and Southeast Anesthesia Associates, P.A., set out cross-assignments of error.

*Law Offices of Grover C. McCain, by Grover C. McCain, Jr. and William R. Hamilton, for plaintiff appellant.*

*Golding, Meekins, Holden, Cosper & Stiles, by V. Elaine Cohoon and John G. Golding, for defendant appellees Gillette, Greenhoot and Southeast Anesthesia, P.A.; and R. Cartwright Carmichael, Jr. for defendant appellees Charlotte Memorial Hospital and Medical Center and Charlotte-Mecklenburg Hospital Authority.*

ARNOLD, Judge.

Plaintiff does not assign error to any issues relevant to defendants Charlotte Memorial Hospital and Charlotte-Mecklenburg Hospital Authority's alleged negligence. The judgment of the trial court that Amy Segrest's death was not caused by negligence of these defendants is affirmed. The remainder of this opinion will address issues relevant to the alleged negligence of defendants Gillette, Greenhoot and Southeast Anesthesia Associates, P.A. (hereinafter Gillette, et al.).

[1]   Plaintiff first contends the trial court erred by excluding Amy Segrest's death certificate from evidence. The death certificate contained, in pertinent part, the following statements:

Death Caused By:

(a) Immediate Cause: Acute Liver Failure with Massive Necrosis

(b) Due to, or as a Consequence of: History of Halothane Anesthesia

Dr. Hobart Wood, the medical examiner who signed the death certificate, testified on voir dire that he did not conduct any part of the autopsy on Amy Segrest and was not in a position to give an opinion on the cause of her death. Given Dr. Wood's own admission that he could not give an opinion as to Amy Segrest's cause of death, the trial court did not err in excluding the death certificate from evidence.

Plaintiff next contends the trial court erred by excluding the testimony of Dr. Wood, the medical examiner, concerning the cause of Amy Segrest's death. The reasons for excluding the death certificate apply equally to Dr. Wood's testimony. The ruling excluding the trial testimony was correct.

[2]   Plaintiff, in his next assignment of error, contends the trial court erred by admitting into evidence a Miscellaneous Lab Slip that came to be known during the trial as the "IgM slip," as well as expert opinions based upon that slip. We agree with plaintiff that the IgM slip itself was inadmissible hearsay and should have been excluded as substantive evidence of the facts contained therein. However, the IgM slip was admissible for the limited purpose of showing the facts upon which the expert opinions as to Amy Segrest's cause of death were based.

SEGREST v. GILLETTE

[96 N.C. App. 435 (1989)]

Testimony at trial showed the following: During the period just before Amy Segrest's death, her doctors conducted various tests in an attempt to determine the cause of her deteriorating condition. On 24 January 1983, several hours before her death, one of her doctors requested a test for the Epstein-Barr virus. The test was performed at Presbyterian Hospital, the only Charlotte Hospital equipped to perform the Epstein-Barr test. At the relevant time, there were two different Epstein-Barr virus tests available: an IgG test, which showed past exposure to the virus, and an IgM test, which showed a current acute infection with the virus. Presbyterian Hospital had the capability to perform both the IgG and IgM tests, although the IgM test had only become available at Presbyterian in early January 1983. The lab slip from Presbyterian indicated her Epstein-Barr test result was "positive 1:160." None of the documents available at the time of trial (hospital chart, lab slips, Charlotte Memorial Hospital log book) specified which Epstein-Barr test was requested or actually conducted.

Sometime after November 1985, Dr. Hershey, who was affiliated with defendant Southeast Anesthesia Associates, asked Ms. Marilee Martin, a Charlotte Memorial lab technician, to obtain further information on the Epstein-Barr test results. Ms. Martin's practice was to call the hospital that performed a particular test to obtain the information requested by a doctor. As a result of her inquiry to Presbyterian Hospital, Ms. Martin wrote out the Miscellaneous Lab Slip that came to be known as the "IgM slip." That slip specified that, of the two available Epstein-Barr tests, Presbyterian had performed an IgM test. The admissibility of this "IgM slip," as well as expert opinions based upon it, is the subject of plaintiff's assignment of error.

Hospital records are admissible under an exception to the rule against hearsay if the records meet the requirements of G.S. § 8C, Rule 803(6), which in pertinent part provides:

(6) Records of Regularly Conducted Activity.—A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the

testimony of the custodian or other qualified witness, unless
the source of information or the method or circumstances
of preparation indicate lack of trustworthiness.

See *Sims v. Insurance Co.*, 257 N.C. 32, 35, 125 S.E.2d 326, 328-9
(1962). The IgM slip does not satisfy the requirements of Rule
803(6). Specifically, the test for Epstein-Barr virus was conducted
on 24 or 25 January 1983. Although defendants' witnesses could
not place precisely when the slip was written, Dr. Hershey, Presi-
dent of Southeast Anesthesia Associates, P.A., testified that he
requested the information on Amy Segrest's Epstein-Barr test results
sometime after November 1985, at least two years and nine months
after Amy Segrest's death. The IgM slip was not, therefore, made
"at or near the time" of the test itself and does not possess the
guarantees of trustworthiness sufficient to justify its admission
into evidence.

Although the IgM slip was not admissible as substantive
evidence of the information it contained, the IgM slip could serve
as the basis of expert opinion testimony. N.C.G.S. § 8C, Rule 703
in pertinent part provides:

> The facts or data in a particular case upon which an expert
> bases an opinion . . . may be those perceived by or made
> known to him at or before the hearing. If of a type reasonably
> relied upon by experts in the particular field in forming opin-
> ions . . . upon the subject, the facts or data need not be ad-
> missible in evidence.

An expert may testify to the facts or data that form the basis
of his opinion,

> not . . . to indicate the ultimate truth [of those facts], but
> as one of the bases for reaching his conclusion, according to
> accepted medical practice. The court should therefore exercise
> care in the manner in which such testimony is elicited, so
> that the jury may understand that the [facts forming the basis
> of the expert opinion do] not constitute factual evidence, unless
> corroborated by other competent evidence.

*State v. Wade*, 296 N.C. 454, 463-4, 251 S.E.2d 407, 412 (1979)
(quoting *State v. Griffin*, 99 Ariz. 43, 49, 406 P.2d 397, 401 (1965) ).

Two defendants, Doctors Greenhoot and Gillette, and Dr. Pollard,
an associate of Greenhoot and Gillette, each testified as to their

opinion on Amy Segrest's cause of death. Each testified that her death was, in their opinion, caused by active Epstein-Barr virus. Each supported their opinion with the IgM slip, which showed a positive diagnosis of active Epstein-Barr virus. Even though the IgM slip was inadmissible hearsay, it was admissible to show the basis of expert opinion testimony.

The court erred in admitting the IgM slip without an instruction limiting its use to providing the basis for the experts' opinions. Since the IgM slip was a crucial piece of evidence supporting defendant's contention that Epstein-Barr virus, not Halothane anesthesia, was the cause of Amy Segrest's death, its admission as substantive evidence in violation of the rule against hearsay constitutes prejudicial error and justifies a new trial.

Since we are awarding plaintiff a new trial, we need not address plaintiff's remaining assignments of error.

[3] Defendants, Gillette, Greenhoot and Southeast Anesthesia Associates, P.A., raise two cross-assignments of error. In the first, defendants Gillette, et al., contend the trial court erred in refusing to instruct the jury about allegedly improper statements made by plaintiff's counsel in closing arguments. Rule 10 of the N.C. Rules of Appellate Procedure in pertinent part provides:

(d) Exceptions and Cross-Assignments of Error by Appellee. Without taking an appeal an appellee may set out exceptions to and cross-assign as error any action or omission of the trial court . . . which deprived the appellee of an alternative basis in law for supporting the judgment. . . .

Appellate Rule 10(d) protects "appellees who have been deprived in the trial court of an alternative basis in law on which their favorable judgment could be supported, and who face the possibility that on appeal prejudicial error will be found in the ground on which their judgment was actually based." *Carawan v. Tate*, 304 N.C. 696, 701, 286 S.E.2d 99, 102 (1982). The judge's refusal to give the requested instruction did not deprive the defendants Gillette, et al., of an alternative basis in law for the verdict in their favor. Hence, this issue is not properly before us and we will not decide it.

[4] In their second cross-assignment of error, defendants Gillette, et al., argue the trial court erred in sanctioning their failure to make discovery by limiting them to one expert witness. Just over two months before the deadline set by the trial court for com-

SEGREST v. GILLETTE

[96 N.C. App. 435 (1989)]

pletion of discovery, plaintiff served an interrogatory upon all defendants seeking information about the expert opinion witnesses that defendants expected to testify—subject matter of testimony, substance of facts and opinions and summary of grounds for each opinion. When defendants failed to answer within the thirty days allowed by Rule 33, plaintiff moved pursuant to Rule 37 for sanctions for defendants' failure to answer the interrogatory. Plaintiff's motion for sanctions was made approximately four and a half months after service of interrogatories on defendants, over three months after the deadline set for completion of discovery, and just over two months before the case was set for trial. Following plaintiff's motion for sanctions, defendants Gillette, et al., responded to plaintiff's interrogatory by identifying the expert witnesses they expected to use at trial and the subject matter and grounds of the expert testimony. The judge granted plaintiff's motion for sanctions. The order prohibited defendants Gillette, et al., from presenting testimony from five doctors listed as expert witnesses and allowed the testimony of a single expert witness (apart from the named doctor-defendants who also testified in the case).

Rule 37 of the N.C. Rules of Civil Procedure in pertinent part provides:

(d) . . . If a party . . . fails . . . (ii) to serve answers or objections to interrogatories submitted under Rule 33, after proper service of the interrogatories, . . . the court in which the action is pending on motion . . . may take any action authorized under subdivisions a, b, and c of subsection (b)(2) of this rule.

Among the allowable sanctions is "an order . . . prohibiting him from introducing designated matters in evidence." N.C.R. Civ. Proc. 37(b)(2)b.

The imposition of sanctions under Rule 37(d) is in the sound discretion of the trial judge. *Imports, Inc. v. Credit Union*, 37 N.C. App. 121, 124, 245 S.E.2d 798, 800 (1978). *See also* W. Shuford, *N.C. Civil Practice and Procedure*, § 37-14 (3rd ed. 1988). Defendants Gillette, et al., were properly served with plaintiff's interrogatory about expert testimony, a crucial aspect of this medical malpractice case. The fact that plaintiff's interrogatories were ultimately answered, however late, does not prevent the court from imposing sanctions under Rule 37(d) on plaintiff's motion. *See Hayes v. Browne*, 76 N.C. App. 98, 331 S.E.2d 763 (1985), *cert. denied*, 315 N.C. 587, 341 S.E.2d 25 (1986). Defendants Gillette, et al.,

did not respond or object to the interrogatory until after the plaintiff moved for sanctions, long after the thirty days allowed for response under Rule 33. Defendants Gillette, et al., do not argue that their failure to reply was involuntary or beyond their control and offer no explanation for their failure to respond. Under these circumstances, we find no abuse of discretion in the judge's order limiting the number of expert witnesses defendants Gillette, et al., could use at trial.

No error as to defendants Charlotte Memorial Hospital and Medical Center, Inc. and Charlotte-Mecklenburg Hospital Authority.

Reversed and remanded for a new trial as to defendants Gillette, Greenhoot and Southeast Anesthesia Associates, P.A.

Chief Judge HEDRICK and Judge BECTON concur.