Fred NEAL, Jr. and Doris
Neal, Appellants,

v.

SMC CORPORATION, Beaver Motor
Coaches, Inc., and R & K Camping
Center, Inc. d/b/a R.V. World of Texas,
Appellees.

No. 05–01–01851–CV.

Court of Appeals of Texas,
Dallas.

Feb. 20, 2003.

**814**

Jay A. Brandt, Novakov Davis & Munck, Dallas, for appellants.

Roddy P. Gillis, David W. Crowe, John William Arnold, Bailey Crowe & Kugler, LLP, Dallas, for appellees.

1. The Honorable David F. Farris, Retired Justice, Second District Court of Appeals, Fort Worth, Texas, sitting by assignment.

Before Justices BRIDGES, FARRIS,[1] and ROSENBERG.[2]

## OPINION

Opinion by Justice ROSENBERG (Assigned).

Fred Neal, Jr. and Doris Neal (the Neals) appeal the trial court's refusal to grant a joint and several judgment against Beaver Motor Coaches, Inc. (Beaver), the manufacturer, along with the seller, R & K Camping Center, Inc. d/b/a R.V. World of Texas (R & K), on their claim for revocation of acceptance under section 2.608 of the Uniform Commercial Code (UCC) and denial of $20,000 of appellate attorney's fees in conformity with the jury's verdict. SMC Corporation and Beaver bring a cross-point complaining that the trial court did not properly submit the question on revocation to the jury. Because we conclude that Beaver is not liable for the revocation of acceptance claim and that the Neals are not entitled to appellate attorney's fees, we resolve the Neals' two issues against them and affirm the trial court's judgment. We need not address the cross-point.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 15, 1997, the Neals purchased a new 1997 Beaver Marquis Motor Coach from R & K for a total purchase price of $290,000. The vehicle had an electrical problem that affected its ability to start, and water leaks and diesel fumes accumulated in the bays. R & K, Beaver, and SMC Corporation[3] were involved in

2. The Honorable Barbara Rosenberg, Former Justice, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

3. SMC Corporation is the parent corporation of Beaver. Although SMC Corporation was

attempting repairs. These defects were not corrected to the Neals' satisfaction. They brought suit against R & K, Beaver, and SMC Corporation for breach of contract, breach of express and implied warranties, violation of the Magnuson–Moss Warranty Act, violations of the Texas Deceptive Trade Practices Act, and revocation of the sale under section 2.608 of the UCC. The case was tried to a jury. The jury found favorably for the Neals only on the revocation of acceptance claim. The jury also awarded the Neals $75,000 in attorney's fees for the preparation and trial of the lawsuit and awarded no attorney's fees for an appeal to the court of appeals. The trial court entered a judgment on the verdict in favor of the Neals and against R & K on the cause of action for revocation of acceptance and concluded that the Neals could not recover from Beaver on the revocation of acceptance cause of action. The court further entered a judgment for attorney's fees in the amount of $75,000 along with costs and pre- and post-judgment interest. The Neals appealed.

## REVOCATION

In the Neals' first issue, they claim that the trial court erred in concluding that Beaver was not jointly and severally liable on the revocation of acceptance claim under section 2.608 of the UCC. They argue that, because Texas law allows a manufacturer to be a seller under the UCC, both the manufacturer and the dealer-seller should be liable for a revocation of acceptance claim. *See Nobility Homes of Tex., Inc. v. Shivers,* 557 S.W.2d 77, 80 (Tex. 1977). Beaver responds that revocation is in the nature of a common-law rescission claim that is proper only against the actual seller of the product. *See Emmons v. Durable ·Mobile Homes, Inc.,* 521 S.W.2d

in this case, there is no argument or issue

153, 154 (Tex.Civ.App.-Dallas 1974, writ ref'd n.r.e.).

### Standard of Review and Applicable Law

 Whether a manufacturer is a "seller" under section 2.608 of the UCC is an issue of first impression in Texas that presents a question of statutory interpretation. Matters of statutory construction are questions of law for the courts to decide. *Johnson v. City of Fort Worth,* 774 S.W.2d 653, 656 (Tex.1989) (per curiam). As such, they are subject to *de novo* review. *See id.* In construing a statute, our objective is to determine and give effect to the legislature's intent. *Nat'l Liab. & Fire Ins. Co. v. Allen,* 15 S.W.3d 525, 527 (Tex.2000). We presume that the legislature intended the plain meaning of its words. *Id.* If possible, we must ascertain the legislature's intent from the language it used in the statute and not look to extraneous matters for an intent the statute does not state. *Id.* We may consider, among other matters, the: (1) object sought to be attained; (2) circumstances under which the statute was enacted; (3) legislative history; (4) common law or former statutory provisions, including laws on the same or similar subjects; (5) consequences of a particular construction; (6) administrative construction of the statute; and (7) title (caption), preamble, and emergency provision of the statute. Tex. Gov't Code Ann. § 311.023 (Vernon 1998). When interpreting a statute, we consider the entire act, its nature and object, and the consequences that would follow from each construction. *Atascosa County v. Atascosa County Appraisal Dist.,* 990 S.W.2d 255, 258 (Tex.1999). With these principles in mind, we turn to the statutory language to be construed.

Section 2.608 of the UCC provides:

raised on appeal as to its liability.

(a) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it

(1) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or

(2) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

(b) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

(c) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

TEX. BUS. & COM.CODE ANN. § 2.608 (Vernon 1994). The UCC gives the buyer the right to recover the purchase price from the seller and maintain a security interest in the rejected goods in his possession for any payments made on their price and any expenses reasonably incurred. *Id.* § 2.711 (Vernon 1994). The general definition of a "seller" is "a person who sells or contracts to sell goods." *Id.* § 2.103(a)(4) (Vernon Supp.2003).

### Analysis

The Neals argue that the Texas Supreme Court's decision in *Nobility Homes of Texas, Inc.* supports their argument that a manufacturer may also be a seller under the UCC. *See Nobility Homes of Tex., Inc.*, 557 S.W.2d at 80. In that case, the supreme court decided whether a manufacturer was a seller in the context of a claim for breach of implied warranty of merchantability. *Id.* Under the authority of section 2.318 of the UCC, the supreme court held that privity of contract was not required and that a manufacturer may also be a seller under the implied warranty theory. *Id.* at 80–81. Section 2.318 specifically gives the courts the authority to make the determination of whether a buyer "may sue a third party other than the immediate seller" for breach of warranties. TEX. BUS. & COM.CODE ANN. § 2.318 (Vernon 1994). No such code provision exists for claims of rejection or revocation.

 Unlike a claim of warranty that seeks a fix for defective goods or damages, a revocation seeks to put the buyer in the same position as if he had rejected the goods at the time of delivery. 4 RONALD A. ANDERSON, UNIFORM COMMERCIAL CODE § 2–608:48, at 372 (3d ed. 1997) (citing *Funk v. Montgomery AMC/Jeep/Renault*, 66 Ohio App.3d 815, 586 N.E.2d 1113, 1116–17 (1990)). Revocation cancels a contract of sale and returns the goods to the seller and the purchase price to the buyer. *Id.* It places the parties in the same position as before the sale. *Id.* A manufacturer, having no part in the sales transaction, would have no part in returning the parties to a status quo. *Id.; see, e.g., Griffith v. Latham Motors, Inc.*, 128 Idaho 356, 913 P.2d 572, 577 (1996); *Gasque v. Mooers Motor Car Co.*, 227 Va. 154, 313 S.E.2d 384, 390 (1984). The nature of a revocation claim logically requires privity of contract. 4 ANDERSON *supra* § 2–608:48, at 372. Accordingly, a majority of courts interpreting section 2.608 hold that revocation of acceptance is a remedy available to the buyer only against the seller and that the manufacturer, in the absence of a contractual relationship with the consumer, is not a seller. *Wright v. O'Neal Motors, Inc.*, 57 N.C.App. 49, 291 S.E.2d 165, 169 (1982); *see, e.g., Gen. Motors Corp. v. Earnest*, 279 Ala. 299, 184 So.2d 811, 814 (1966); *Seekings v. Jimmy GMC of Tucson, Inc.*, 130 Ariz. 596, 638 P.2d 210, 214

(1981); *Conte v. Dwan Lincoln–Mercury, Inc.,* 172 Conn. 112, 374 A.2d 144, 150 (1976); *Griffith,* 913 P.2d at 577; *Henderson v. Chrysler Corp.,* 191 Mich. App. 337, 477 N.W.2d 505, 508 (1991); *Gasque,* 313 S.E.2d at 390.

The Neals provide case authority that recognizes exceptions to the requirement of privity of contract to obtain the remedy of revocation against a manufacturer. Some courts have allowed a buyer to revoke acceptance against a non-privity manufacturer if the manufacturer has expressly warranted goods to the ultimate buyer. *See, e.g., Volkswagen of Am., Inc. v. Novak,* 418 So.2d 801, 804 (Miss.1982); *Fode v. Capital RV Ctr., Inc.,* 575 N.W.2d 682, 687 (N.D.1998); *Gochey v. Bombardier, Inc.,* 153 Vt. 607, 572 A.2d 921, 924 (1990). These courts find that an express warranty creates a direct contract with the ultimate buyer. *See Novak,* 418 So.2d at 804; *Fode,* 575 N.W.2d at 687; *Gochey,* 572 A.2d at 924. Specifically, the Mississippi Supreme Court justified a revocation against a manufacturer because "the retailer[']s sales contract, accompanied by the manufacturer's warranty, are so closely linked both in time of delivery and subject matter, that they blended into a single unit at the time of sale," providing a contractual relationship. *Novak,* 418 So.2d at 804. In North Carolina, this rule has been codified. *See* N.C. GEN.STAT. § 25–2–103(1)(d) (2002). Other courts have disregarded privity so that the buyer would not be deprived of a remedy. *Ford Motor Credit Co. v. Harper,* 671 F.2d 1117, 1126 (8th Cir.1982).

■ Nevertheless, the majority position is consistent with the way Texas courts have treated rescission, another return-to-status quo remedy.[4] *See, e.g., Carrow v.*

*Bayliner Marine Corp.,* 781 S.W.2d 691, 696 (Tex.App.-Austin 1989, no writ); *Emmons,* 521 S.W.2d at 154. In Texas, rescission requires privity to the sales contract. *S. Methodist Univ. v. Evans,* 131 Tex. 333, 337, 115 S.W.2d 622, 624 (1938); *Emmons,* 521 S.W.2d at 154. Further, in *Southwestern Bell Telephone Co. v. FDP Corp.,* 811 S.W.2d 572 (Tex.1991), the Texas Supreme Court recognized the distinction between breach of contract and breach of warranty claims:

> The UCC recognizes that breach of contract and breach of warranty are not the same cause of action. The remedies for breach of contract are set forth in section 2.711.... The remedies for breach of warranty, however, are set forth in section 2.714, and are available to a buyer who has finally accepted goods, but discovers that the goods are defective in some manner.

*Southwestern Bell Tel. Co.,* 811 S.W.2d at 576 (citations omitted). Revocation is a remedy for a breach of contract because its remedies are under section 2.711. *See* TEX. BUS. & COM.CODE ANN. § 2.711 (Vernon 1994). In Texas, a breach of contract action requires privity. *Boy Scouts of Am. v. Responsive Terminal Sys., Inc.,* 790 S.W.2d 738, 747 (Tex.App.-Dallas 1990, writ denied).

■ Considering the requirements of rescission in Texas, revocation as a remedy for breach of contract, and the absence of a code provision allowing a court to decide the question of whether a buyer's remedy of revocation should be limited to an immediate seller or establishing the remedy against a remote seller, we conclude that the remedy of revocation is available to the buyer only against the immediate seller

---

**4.** The results of a revocation under the UCC are, in certain instances, indistinguishable from that of common law rescission. *Oil Country Specialists, Ltd. v. Philipp Bros., Inc.*

762 S.W.2d 170, 177 (Tex.App.-Houston [1st Dist.] 1988), *writ denied,* 787 S.W.2d 38 (Tex. 1990) (per curiam).

and that the manufacturer, in the absence of a contractual relationship with the consumer, is not a seller. A manufacturer's express warranty does not provide a contractual relationship to the sale under section 2.608. *See Seekings,* 638 P.2d at 214 (privity does not exist where dealer is manufacturer's agent only for purpose of delivering manufacturer's warranty).

Here, the evidence demonstrated that R & K was the seller of the motor coach. There was no allegation or evidence that R & K was an agent of Beaver for the sale of the motor coach. Accordingly, the Neals had no privity of contract with Beaver to obtain the remedy of revocation provided under section 2.608. *See id.; Conte,* 374 A.2d at 150 (no privity where no evidence that dealer was acting as manufacturer's agent in making sale); *Clark v. Ford Motor Co.,* 46 Or.App. 521, 612 P.2d 316, 319 (1980) (same). We resolve the Neals' first issue against them.

Because we have concluded that Beaver is not liable for the revocation, we need not address the cross-point complaining of the submission of the revocation issue to the jury. TEX.R.APP. P. 47.

### APPELLATE ATTORNEY'S FEES

In their second issue, the Neals contend the trial court erroneously denied them recovery of their appellate attorney's fees. In Question 25, the jury allowed the Neals $75,000 as attorney's fees for preparation and trial, but nothing for any appeal. The Neals' attorney, Jay Brandt, testified for the Neals that, in his view, "if either side did appeal to the Court of Appeals, it might require an additional $20,000 in attorney's fees." The trial court refused to disregard the jury verdict and award appellate attorney's fees in the judgment. The trial court's award of attorney's fees may include appellate attorney's fees. *Siegler v. Williams,* 658 S.W.2d 236, 241 (Tex.App.-Houston [1st Dist.] 1983, no

writ). There must be evidence of the reasonableness of fees for appellate work to support the award of appellate attorney's fees, and the trial court must condition the award of attorney's fees to an appellee upon the appellant's unsuccessful appeal. *Id.* The trier of fact, in its discretion, may allow a fee to an attorney for an appeal, but is not required to do so. *Anderson, Greenwood & Co. v. Martin,* 44 S.W.3d 200, 221 (Tex.App.-Houston [14th Dist.] 2001, pet. denied).

 Here, the Neals appealed the denial of a judgment against Beaver. Attorney's fees are awarded to successful plaintiffs so that they can defend their judgment. *See Smith v. Smith,* 757 S.W.2d 422, 426 (Tex.App.-Dallas 1988, writ denied). We have concluded that the Neals are not entitled to a judgment against Beaver. Accordingly, if the Neals were entitled to appellate fees, the fees would have been contingent on a successful defense of their judgment against R & K, not Beaver. R & K did not appeal. Therefore, the award of appellate attorney's fees for the successful defense of an appeal is moot. We resolve the Neals' second issue against them.

### CONCLUSION

Having resolved the Neals' two issues against them, we affirm the trial court's judgment.