418 So.2d 801 (1982)
VOLKSWAGEN OF AMERICA, INC.
v.
Jane E. NOVAK and Wayne A. Novak.
No. 53358.
Supreme Court of Mississippi.
August 11, 1982.
Rehearing Denied September 8, 1982.
*802 Henderson Duke & Dantone, Edward D. Lamar, Greenville, for appellant.
Lake, Tindall, Hunger & Thackston, Charles S. Tindall, III, Lott, Sanders, Gwin & Fonda, Arnold F. Gwin, Greenwood, Campbell & DeLong, Fred C. DeLong, Jr., James T. Milam, for appellee.
Before PATTERSON, C.J., and BOWLING and DAN M. LEE, JJ.
PATTERSON, Chief Justice, for the Court:
Volkswagen of America, Inc. (VWoA) brings this appeal from a judgment of the Circuit Court of Washington County in favor of Jane and Wayne Novak (Novak) in the amount of $19,398.18 for breach of warranty on a station wagon sold to appellees by John Hinkle, Inc. (Hinkle), to which MAC Sales, Inc. (MAC) succeeded.
On March 14, 1980, the Novaks purchased a 1980 Volkswagen Dasher diesel powered station wagon for $10,318.98 from Hinkle who delivered to them a manufacturers new car limited warranty from VWoA along with the automobile.
The first major problem they experienced with the vehicle occurred the last week of June, 1980, while they were traveling to Texarkana, Arkansas. The engine, with only 5,716 miles, failed which necessitated the car being towed to Hinkle for repairs and the Novaks renting another vehicle.
Before the repairs were completed, MAC purchased the assets of Hinkle and became the franchised Volkswagen dealer in Greenville, Mississippi, where the purchase had been made. After three weeks in MAC's shop, the vehicle was repaired by the installation of a new engine.
Several weeks later, on a trip to Atlanta, Georgia, the engine began to "act up" and was taken to a VWoA dealer in Atlanta for a checkup. The Novaks, upon returning to Greenville, took the automobile to MAC for more repairs where it stayed for an additional week or so.
*803 Upset with all the repairs the new automobile was requiring Novak wrote the president of VWoA on August 3, 1980, informing him of the difficulties with the car. In his letter Novak stated "at this point I feel that the only equitable solution would be to return this obvious embarrassment to your company for suitable research into the original problems and replace it with a comparable vehicle and start our relationship anew." He received a reply from a district office informing him that VWoA would look into the problem.
Despite the repairs and persistent complaints, the automobile continued to malfunction and the replacement engine, with only 5,852 miles on it, failed on November 18, 1980. A third engine was then ordered for the automobile but was so defective when sent from the factory that it would not develop sufficient oil pressure and the automobile could not be driven out of MAC's repair shop. A fourth engine was then ordered.
Novak again wrote the president of VWoA demanding a new replacement vehicle and on January 19, 1981, appellees' attorney, wrote VWoA, Hinkle, and MAC to inform them that if a new engine was not installed with a written warranty or a new replacement vehicle offered on or before January 25, 1981, the contract would be revoked. This demand was not met before the date specified and on January 26, 1981, appellees notified VWoA, Hinkle and MAC of their revocation of acceptance. The vehicle was then left at MAC's lot.
Novak filed suit against Hinkle, MAC and VWoA to revoke acceptance of the purchase contract for the alleged reason the vehicle did not conform to the contract due to defects which substantially impaired its value. The court granted MAC and Hinkle directed verdicts and submitted the case to the jury on the question of rescission and breach of warranty against VWoA. The jury returned a verdict for $19,398.18, which included the purchase price, attorneys fees, incidental and consequential damages.
The first issue is whether the purchasers are entitled to revoke acceptance of the sales contract and recover the purchase price from VWoA, the manufacturer of the automobile.
Miss. Code Ann. § 75-2-608 (1972), provides the remedy of revocation of acceptance by a buyer upon breach of contract by the seller. In order to revoke acceptance the buyer must (1) accept the goods without knowledge of the non-conformity; (2) the non-conformity must substantially impair the value of the goods; and (3) revocation must occur within "a reasonable time after the buyer discovers or should have discovered the grounds for it and before any substantial change in condition of the goods which is not caused by their own defects." Revocation is not effective until the buyer notifies the seller. When these conditions are met, the buyer becomes subject to the duties imposed by Miss. Code Ann. §§ 75-2-602(2), and 75-2-604 for the care of the goods.
Appellee points out that Miss. Code Ann. § 11-7-20 (Supp. 1981), abolished privity of contract for breach of warranty claims including actions brought under the Uniform Commercial Code. § 11-7-20 states:
In all causes of action for personal injury or property damage or economic loss brought on account of negligence, strict liability or breach of warranty, including actions brought under the provisions of the Uniform Commercial Code, privity shall not be a requirement to maintain said action.
We agree with appellees assertion that revocation of acceptance is a "suit brought under the UCC" and is specifically authorized by § 75-2-608, and thus falls within the confines of § 11-7-20. Therefore, we are of the opinion that a seller is responsible for the economic loss which results from his breach of an implied warranty of merchantability without regard to privity. When the breach justifies revocation of acceptance, we hold, the seller is liable for the return of the purchase price, plus other damages as authorized by statute.
*804 In the present case Novak met the requirements of § 75-2-608 (revocation of acceptance). Unquestionably the nonconformity substantially impaired the value of the vehicle to Novak and therefore justified revocation of acceptance.
VWoA argues however that they were not a party to the sales contract, therefore, revocation of acceptance and return of the purchase price is not available because they are not "sellers" as defined by Miss. Code Ann. § 75-2-103(1)(d) (1972).[1] While the argument is somewhat persuasive, we are nevertheless of the opinion that the retailers sales contract accompanied by the manufacturer's warranty, are so closely linked both in time of delivery and subject matter, that they blended into a single unit at the time of sale. We are fortified in this statement by the general observance that sales are usually made, not only upon the make and model of the automobile, but also upon the assurance of the manufacturer, through its warranty, that the vehicle will conform to the standards of merchantability.
Although we do not believe we err in holding VWoA to be a seller and liable as such, it is also liable under its express warranty to "repair and replace" as stated in Royal Lincoln Mercury Sales, Inc., et al. v. Wallace, 415 So.2d 1024, 1028 (Miss. 1982), wherein this Court held that "If it [the repair and replacement warranty] fails, however, as a remedy in its essential purpose, then its function as a limitation of liability also fails." Likewise, VWoA cannot shield itself from liability with the limited warranty of "repair and replacement." VWoA cannot, in our opinion, continue indefinitely to repair an automobile which is patently defective. The evidence proved this automobile was so defective that it did not conform to its primary purpose of transportation, and that it would be difficult, if not impossible, to sell for a reasonable price, thus leaving the purchaser with no redress short of filing suit.
VWoA argues the lower court erred in granting MAC and Hinkle directed verdicts. It is clear from Altamil Corp. v. Miss. State Highway Com'n., 391 So.2d 1013 (Miss. 1980); Lowery v. Conner, 189 So.2d 922 (Miss. 1966); and Junkins v. Brown, 238 Miss. 142, 117 So.2d 712 (1960), that VWoA has no standing to complain of the directed verdicts granted its co-defendants.
VWoA next contends the trial court's action in allowing Moorman, MAC's shop foreman and service manager, to testify as an expert with regard to Volkswagen diesel engines was an abuse of discretion since he had never worked on a Volkswagen diesel engine before he came to work for MAC in July, 1980. The evidence showed Moorman had been a mechanic for 8 years and had worked exclusively on diesel engines three years with a construction contractor and as mentioned, was the service manager of the VWoA authorized dealership. According to Early-Gary, Inc. v. Walters, 294 So.2d 181 (Miss. 1974), this was not error, but rather rested within the sound discretion of the trial judge and since the discretion was not abused this was not error.
VWoA argues attorneys fees should not be allowed since the issue was decided by the jury. In Royal Lincoln, we held that 15 U.S.C. § 2310(d)(2), has application to cases of this nature. This congressional enactment provides that attorneys fees are to be determined by the court. In the present case the question of attorneys fees was presented to the jury by stipulation setting out the hours actually worked and the value per hour as being a reasonable fee. Although not technically correct, the *805 jury assessed attorneys fees just as the court would have done via the stipulation. It is our opinion this was harmless error at most.
Appellant finally asserts that while appellees in their declaration pray for money damages, they are, in essence, seeking rescission of the contract, an action in equity. Although it is never too late to object to jurisdiction, this court, absent other error, will not reverse for this reason alone in a jurisdictional dispute between courts. Miss.Const.Art. 6, § 147; Louisville & N.R. Co. v. Hasty, 360 So.2d 925 (Miss. 1978); McLean v. Green, 352 So.2d 1312 (Miss. 1977).
There being, in our opinion, no reversible error, the case is affirmed.
AFFIRMED.
SUGG and WALKER, P. JJ., and BROOM, ROY NOBLE LEE, BOWLING, HAWKINS, DAN M. LEE and PRATHER, JJ., concur.
NOTES
[1] "Seller" means a person who sells or contracts to sell goods.

But see Nobility Homes of Texas, Inc. v. Shivers, 557 S.W.2d 77, 80 (Tex. 1977), in discussing the definition of "seller" stated: `Under the terms of the Code, a manufacturer may also be a seller. The Code does not limit its definition of seller to the immediate seller of a product. Instead the Code defines a seller as `a person who sells or contracts to sell goods.' Tex.Bus. & Comm.Code Ann. § 2.103(4). Nobility Homes `sells or contracts to sell goods;' consequently, Nobility Homes is a seller under the Code."