1998 ND 65

**Albert and Birdie FODE, Plaintiffs, Appellees and Cross–Appellants,**

v.

**CAPITAL RV CENTER, INC., Coachmen Recreational Vehicle Company, Defendants, Appellants and Cross–Appellees,**

and

**Metropolitan Federal Bank, Defendant.**

Civil No. 970240.

Supreme Court of North Dakota.

March 26, 1998.

Robert V. Bolinske, Bismarck, for plaintiffs, appellees, and cross-appellants.

J. Philip Johnson, of Wold Johnson, P.C., Fargo, and Daniel E. Buchanan, of Buchanan Law Office, Jamestown, for defendants, appellants, and cross-appellees.

Sandstrom, Justice.

[¶ 1] Coachmen Recreational Vehicle Co. and Capital RV Center, Inc., (defendants) appealed from a judgment entered upon a jury verdict granting Albert and Birdie Fode revocation of their acceptance of a motor home, finding Coachmen breached its warranty to Fodes, and awarding Fodes damages, and from an order denying the defendants' motion for judgment as a matter of law or for a new trial. Fodes cross-appealed from the judgment. We hold Fodes were entitled to revoke acceptance of the motor home against both defendants, and the jury verdict is supported by substantial evidence. We also hold the trial court abused its discretion in awarding Fodes attorney fees without affording the defendants an opportunity to be heard. We affirm the judgment, reverse the award of attorney fees, and remand for reconsideration of the amount of the attorney fee award.

I

[¶ 2] In January 1992, Capital sold Fodes a motor home manufactured by Coachmen. Capital's sales contract with Fodes said the motor home was "sold new with sportscoach" manufacturer warranty and, in bold print,

included language stating Capital disclaimed all warranties:

"MANUFACTURER'S WARRANTY: ANY WARRANTY ON ANY NEW VEHICLE OR USED VEHICLE STILL SUBJECT TO A MANUFACTURER'S WARRANTY IS THAT MADE BY THE MANUFACTURER ONLY. THE SELLER HEREBY DISCLAIMS ALL WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, ANY STATEMENT CONTAINED HEREIN DOES NOT APPLY WHERE PROHIBITED BY LAW."

[¶ 3] Coachmen's "new recreational vehicle limited warranty" for the motor home said:

### "COVERAGE PROVIDED

"Coachmen Recreational Vehicle Company will, for one year from the retail purchase date, or for the first 15,000 miles of use, whichever comes first, make repairs which are necessary because of defects in material or workmanship. We will repair or replace any defective part at no cost to you. Because of design changes and improvements, we may substitute parts or components of substantially equal quality. This warranty covers you, as the first retail purchaser of our new product, from an authorized Coachmen dealer.

### "TO OBTAIN SERVICE

"For warranty service, take the product, at your expense, to an authorized Coachmen dealer or service center.

\*   \*   \*   \*   \*   \*

"WE SHALL NOT BE LIABLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES, such as expenses for transportation, lodging, loss or damage to person property, loss of use of your product, inconvenience, or loss of income. Some states do not allow exclusion or limitation of incidental or consequential damages, so the above limitation or exclusion may not apply to you.

"   \*   \*   \*   \*   \*   \*

"IMPLIED WARRANTIES, INCLUDING ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, ARE LIMITED IN DURATION TO THE TERM OF THIS WRITTEN WARRANTY. Some states do not allow limitations on how long an implied warranty lasts, so the above limitation may not apply to you.

"This warranty gives you specific legal rights, and you may also have other rights which vary from state to state."

Albert Fode and Capital signed a "warranty registration," which said the motor home was warranted in the name of Capital as the dealer and certified "all warranties [had been] clearly explained." Fodes, however, testified Coachmen's warranty was not delivered to them.

[¶ 4] According to Fodes, they experienced numerous problems with the motor home, including several malfunctions of the electrical system, defective shocks and equalizer bar, and insufficient power to drive the vehicle faster than 65 miles per hour. They testified those problems effectively precluded them from using the motor home for their intended purpose. Finally, in January 1993, Fodes were unable to start the motor home for several days, and they requested revocation of their acceptance. The defendants refused Fodes' request.

[¶ 5] Fodes sued Capital and Coachmen for revocation of acceptance and breach of warranty. The trial court granted Capital summary judgment on Fodes' breach of warranty claim against it. In Fodes' revocation of acceptance claim, a jury awarded them $9,600 plus interest from Capital and $20,000 plus interest from Coachmen. In Fodes' breach of warranty claim against Coachmen, the jury awarded them $5,000 plus $1,500 in incidental and $5,000 in consequential damages. The jury also decided Fodes were entitled to attorney fees on their breach of warranty claim against Coachmen.

[¶ 6] Judgment was entered against Capital for $12,225.45 "plus attorney's fees to be determined by the court" and against Coachmen for $33,139.75 "plus attorney's fees to be

determined by the court."[1] The defendants moved for judgment as a matter of law, or, alternatively, for a new trial. Fodes asked the trial court to decide the amount of their attorney fee award. The trial court concluded some of the jury instructions were erroneous, but allowed Fodes to elect either to accept the jury's verdict, or to receive a new trial. Fodes accepted the jury verdict. At the defendants' request, the court deferred ruling on the amount of Fodes' attorney fee award pending resolution of the defendants' appeal. The defendants appealed, and Fodes cross-appealed.

[¶ 7] We entered a limited remand to the trial court for an expedited decision on the amount of Fodes' attorney fee award, and we retained jurisdiction of the appeal under N.D.R.App.P. 35(b). The trial court awarded Fodes $27,358.69 in attorney fees for proceedings through this appeal and certified the record back to this Court.

[¶ 8] The trial court had jurisdiction under N.D. Const. Art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal was timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. Art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.

## II

■ [¶ 9] The defendants contend Fodes were not, as a matter of law, entitled to revoke acceptance against Coachmen. The defendants argue Coachmen is not a "seller" under the Uniform Commercial Code (N.D.C.C. Title 41), and a buyer generally may revoke acceptance of goods only against an immediate seller under N.D.C.C. § 41–02–71 (U.C.C. § 2–608).

[¶ 10] Section 41–02–71, N.D.C.C., authorizes a buyer to revoke acceptance of nonconforming goods:

"*Revocation of acceptance in whole or in part.*

"1. The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it:

"a. On the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or

"b. Without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

"2. Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

"3. A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them."

[¶ 11] Under N.D.C.C. § 41–02–71, a buyer may revoke acceptance of nonconforming goods if "the seller's" assurances induced the buyer's acceptance, and revocation is not effective until the buyer notifies "the seller." Section 41–02–03(1)(d), N.D.C.C. (U.C.C. § 2–103(1)(d)), defines seller as "a person who sells or contracts to sell goods."

■ [¶ 12] Under those U.C.C. provisions, a buyer generally may revoke acceptance of goods only against its own seller. *See Voytovich v. Bangor Punta Operations, Inc.*, 494 F.2d 1208, 1211 (6th Cir.1974); *Seekings v. Jimmy GMC of Tucson, Inc.*, 130 Ariz. 596, 638 P.2d 210, 214 (1981); *Conte v. Dwan Lincoln–Mercury, Inc.*, 172 Conn. 112, 374 A.2d 144, 149–50 (1976); *Edelstein v. Toyota Motors Dist.*, 176 N.J.Super. 57, 422 A.2d 101, 104–05 (1980); *Henderson v. Chrysler*

---

1. The judgment against Capital consisted of $9,600 for damages, $2,280.45 for interest through the date of judgment, and $345 for costs and disbursements. The judgment against Coachmen consisted of $26,500 for damages, $6,294.75 for interest through the date of judgment, and $345 for costs and disbursements. The judgment said the total costs, disbursements, and attorney fees awarded could be collected from either or both defendants, but not in an amount exceeding $345 in costs plus the amount of attorney fees determined by the court. During oral argument to this Court, Fodes' counsel said the $26,500 damage award against Coachmen represented $20,000 for revocation of acceptance and $6,500 for incidental and consequential damages.

*Corp.*, 191 Mich.App. 337, 477 N.W.2d 505, 508 (1991); *Wright v. O'Neal Motors, Inc.*, 57 N.C.App. 49, 291 S.E.2d 165, 169 (1982); *Noice v. Paul's Marine & Camping Center, Inc.*, 5 Ohio App.3d 232, 451 N.E.2d 528, 532 (1982); *Gasque v. Mooers Motor Car Co., Inc.*, 227 Va. 154, 313 S.E.2d 384, 390 (1984). *See generally* 1 White & Summers, Uniform Commercial Code, § 8–4 (4th ed.1995); 4 Anderson, Uniform Commercial Code § 2–608:46 et seq. (1997); 67A Am.Jur.2d *Sales*, § 1195 (1985).

[¶ 13] Under different formulations of an exception to the general rule, however, some courts have allowed a buyer to revoke acceptance against a non-privity manufacturer if the manufacturer has expressly warranted goods to the ultimate buyer. *See Durfee v. Rod Baxter Imports, Inc.*, 262 N.W.2d 349 (Minn.1977); *Volkswagen, Inc. v. Novak*, 418 So.2d 801 (Miss.1982); *Ventura v. Ford Motor Corp.*, 180 N.J.Super. 45, 433 A.2d 801 (1981); *Gochey v. Bombardier, Inc.*, 153 Vt. 607, 572 A.2d 921, 924 (1990). *See generally* 1 White & Summers at § 8–4; 67A Am. Jur.2d *Sales* at § 1195.

[¶ 14] This Court has not directly addressed whether a buyer may revoke acceptance of goods against a non-privity manufacturer. *See Haggard v. OK RV Sales*, 315 N.W.2d 475, 477 (N.D.1982) (reversing directed verdict for seller because there were issues of fact about alleged defects in motor home); *Erling v. Homera, Inc.*, 298 N.W.2d 478, 484 (N.D.1980) (affirming judgment allowing buyers of mobile home to revoke acceptance and requiring seller and manufacturer to return buyers' purchase price).

[¶ 15] In *Troutman v. Pierce, Inc.*, 402 N.W.2d 920 (N.D.1987), buyers of a mobile home sued the seller and the manufacturer for revocation of acceptance, and the seller cross-claimed against the manufacturer for contribution or indemnity. A jury found the manufacturer, but not the seller, had breached express and implied warranties; there were no substantial defects in the mobile home which were the responsibility of the seller; and there were substantial defects in the mobile home which were the responsibility of the manufacturer. The judgment decreed the buyers had validly revoked their

acceptance of the mobile home, allowed the buyers to recover their damages, and ordered the manufacturer to indemnify the seller.

[¶ 16] On appeal, the manufacturer argued the trial court erred in ruling the buyers had validly revoked acceptance of the mobile home because the jury found the seller was not responsible for any of the unremedied defects. This Court ruled:

"The buyer's right of revocation is not conditioned upon whether it is the seller or the manufacturer that is responsible for the nonconformity. Under § 41–02–71 (2–608), N.D.C.C., a buyer is entitled to revoke his acceptance of a unit if a 'nonconformity substantially impairs its value to him,' regardless of whether it is the seller or the manufacturer that is responsible for the nonconformity. The jury found that there were substantial defects in the mobile home that substantially impaired its value to the [buyers] and constituted breaches of express and implied warranties. The jury also found that [manufacturer] and [seller] were given reasonable notice of the defects and a reasonable opportunity to remedy the defects. Thus, the trial court did not err in determining that the [buyers] had validly revoked their acceptance of the mobile home."

*Troutman* at 922–23. *Troutman* affirmed a judgment allowing the buyer to revoke acceptance against a non-privity manufacturer; however, the parties did not specifically argue whether the buyer could revoke acceptance against the non-privity manufacturer, and this Court did not decide that issue.

[¶ 17] In *Hart Honey Co. v. Cudworth*, 446 N.W.2d 742 (N.D.1989), a buyer of bee equipment sought revocation of acceptance against a commercial bee business and two of the business's owners. One of the issues in *Hart Honey* was whether the commercial bee business or one of its owners, the secretary/treasurer, was the "seller" of the equipment under N.D.C.C. § 41–02–03(1)(d). This Court ruled the secretary/treasurer, who had retained title to the equipment, was the seller of the equipment, and the commercial bee business was not the seller and was not liable

to the buyer for the purchase price of the equipment. *Hart Honey* at 744.

[¶ 18] The defendants argue *Troutman* appears to adopt the minority position that privity is not required to maintain a revocation of acceptance claim against a manufacturer. *See* Gary L. Monserud, *Judgment Against a Non-breaching Seller: The Cost of Outrunning the Law to do Justice under Section 2–608 of the Uniform Commercial Code,* 70 N.D.L.Rev. 809, 812 n. 20 (1994). The defendants essentially argue *Troutman* has been overruled by *Hart Honey*. Neither case, however, is dispositive of the issue raised here. *Troutman* did not specifically decide this issue, and *Hart Honey* did not involve a manufacturer and a seller in the distribution chain for goods.

[¶ 19] In *Durfee* at 357 (citations omitted), the Minnesota Supreme Court considered a distributor's argument it was not liable to a buyer for revocation of acceptance because it had no direct contractual relationship with the buyer:

"Although the relevant sections of Article 2 of the Uniform Commercial Code seem to require a buyer-seller relationship, [the distributor] does not escape liability on this ground in these circumstances.

"The existence and comprehensiveness of a warranty undoubtedly are significant factors in a consumer's decision to purchase a particular automobile. [The distributor] evidently warrants its automobiles to increase retail sales and indirectly its own sales of Saab automobiles. When the exclusive remedy found in the warranty fails of its essential purpose and when the remaining defects are substantial enough to justify revocation of acceptance, we think the buyer is entitled to look to the warrantor for relief. If plaintiff had sued [the distributor] for breach of either express warranty or implied warranty, the absence of privity would not bar the suit despite the language of the pertinent Code sections.... We see no reason why the result should differ merely because plaintiff has chosen to revoke his acceptance instead of suing for breach of warranty. The remedies of the Code are to be liberally administered...."

[¶ 20] In *Novak* at 803, the purchasers of a new car revoked acceptance against a manufacturer who had extended a limited warranty to the purchasers. In affirming revocation against the manufacturer, the Mississippi Supreme Court concluded the manufacturer was a "seller":

"[T]he retailer[']s sales contract [and] the manufacturer's warranty, are so closely linked both in time of delivery and subject matter, that they blended into a single unit at the time of sale. We are fortified in this statement by the general observance that sales are usually made, not only upon the make and model of the automobile, but also upon the assurance of the manufacturer, through its warranty, that the vehicle will conform to the standards of merchantability."

*Novak* at 804.

[¶ 21] Here, Capital's sales contract with Fodes expressly said the motor home was "sold new with sportscoach" manufacturer warranty. In a provision disclaiming Capital's warranty liability, Capital's sales contract with Fodes specified "MANUFACTURER'S WARRANTY: ANY WARRANTY ON ANY NEW VEHICLE ... IS THAT MADE BY THE MANUFACTURER ONLY." Coachmen's "new recreational vehicle limited warranty" directed the buyer to take the product to "an authorized Coachmen dealer or service center" for warranty service, and Albert Fode signed a "warranty registration," which said the mobile home was warranted in the name of Capital as the dealer. These documents unambiguously passed Coachmen's warranty to Fodes and specified the product was warranted in the name of Capital as the dealer. Capital's sales contract with Fodes and Coachmen's warranty are "so closely linked both in time of delivery and subject matter, that they blended into a single unit at the time of sale." *Novak* at 804.

[¶ 22] In proceedings before the trial court, Coachmen asserted the general rule precluded revocation of acceptance against a non-privity manufacturer, and Fodes contended revocation against Coachmen was authorized under an exception to the general rule. In

instructing the jury revocation of acceptance applied to Coachmen, the trial court, as a matter of law, effectively ruled revocation against a manufacturer was available under the exception. We conclude reasonable persons could not disagree about the application of the exception to this case. Coachmen, therefore, is a seller for purposes of Fodes' revocation of acceptance claim. We hold Coachmen was not entitled to a judgment as a matter of law on the revocation of acceptance claim, and the trial court did not err in instructing the jury Fodes' revocation of acceptance claim applied to Coachmen.

## III

### A

[¶ 23] The defendants argue Capital was entitled to judgment as a matter of law on the revocation of acceptance claim, because Capital had disclaimed all warranties and Fodes' revocation claim against it was based on the same facts as a breach of warranty claim.

[¶ 24] A buyer is not barred from revoking acceptance despite a seller's disclaimer of warranties, *Blankenship v. Northtown Ford, Inc.*, 95 Ill.App.3d 303, 50 Ill. Dec. 850, 420 N.E.2d 167 (1981); *Shelton v. Farkas*, 30 Wash.App. 549, 635 P.2d 1109 (1981); *Beneficial Com. Corp. v. Cottrell*, 212 Mont. 493, 688 P.2d 1254 (1984), or limitation on a buyer's remedies. *Hub Motor Co. v. Zurawski*, 157 Ga.App. 850, 278 S.E.2d 689 (1981). *See* 4 Anderson, Uniform Commercial Code 2–608:15 (1997). Contrary to Capital's argument, this motor home was not sold "as is." Rather, Capital passed Coachmen's warranty to Fodes. We reject the defendants' argument the language in the sales contract stating Capital disclaimed all warranties precludes Fodes' claim for revocation of acceptance against Capital as a matter of law. The court did not err in instructing the jury Fodes' revocation of acceptance claim applied to Capital.

### B

[¶ 25] The defendants argue the motor home conformed to Capital's sales contract with Fodes, because "Capital's obligation under the contract was to deliver the ... motor home [and] Fodes received exactly what they contracted for—a motor home with possible defects."

[¶ 26] Issues about nonconformity of the motor home and substantial impairment of value are questions of fact which the jury resolved against the defendants. *See Hart Honey* at 745. Although the defendants argue the "clearly erroneous" rule applies to those factual issues, we apply the substantial evidence test to the jury's verdict. *See Troutman* at 923. We review questions of fact tried to the jury in the light most favorable to the jury verdict, and we affirm the jury's decision if there is substantial evidence to support the verdict. *Troutman* at 923.

[¶ 27] The plaintiffs presented extensive evidence about the difficulties they experienced with the motor home, including several malfunctions of the electrical system, defective shocks and equalizer bar, and insufficient power to drive the vehicle faster than 65 miles per hour. They testified these problems precluded them from using the motor home for their intended purpose. Although the defendants presented evidence the motor home conformed to the sales contract, we do not reweigh the evidence. We hold there was sufficient evidence to support the jury verdict the motor home was nonconforming in a manner which substantially impaired its value to Fodes.

## IV

### A

[¶ 28] The defendants argue the trial court erred in attempting to remedy erroneous instructions by allowing Fodes to accept a verdict based upon those instructions, or to receive a new trial. They argue the instruction authorizing revocation of acceptance against both Coachmen and Capital was incorrect as a matter of law. As previously discussed, however, the instruction was a correct statement of the law under the circumstances of this case.

### B

[¶ 29] The defendants also argue the jury ignored the following instructions in finding against Capital and Coachmen:

"[T]he Revocation of Acceptance and Breach of Warranty claims are mutually exclusive, that is, the plaintiffs, if successful, may recover damages, if any, under only one theory or claim, but not both.

\* \* \* \* \* \*

"Incidental and/or consequential damages may be awarded to plaintiffs if you determine that the defendants in the instant action breached any express or implied warranties." [2]

In denying the defendants' motion for judgment as a matter of law and for a new trial, the court ruled:

"In all candor, the jury got it right; and the Judge was wrong. First, an award of incidental damages does *not* require a preliminary finding of breach of warranty. Second, breach of warranty and revocation of acceptance are not mutually exclusive. Section 41–02–93, N.D.C.C."

[¶ 30] The defendants did not object to either instruction. The special verdict did not preclude the jury from finding for Fodes under both revocation of acceptance and breach of warranty, and the judgment awarded Fodes damages only for revocation of acceptance. *See* fn. 1. The instruction about incidental and consequential damages for breach of warranty was, by itself, a correct statement of the law and corresponded with the special verdict. *See* N.D.C.C. § 41–02–93 (U.C.C. § 2–714) (authorizing incidental and consequential damages for breach of warranty). Although incidental and consequential damages are also permissible for a revocation of acceptance claim, *see Troutman* at 923, the defendants have not demonstrated how they were prejudiced by these two instructions. We are not persuaded these instructions require a new trial, and we hold the trial court did not·abuse its discretion in denying the defendants' motion for a new trial on the basis of those instructions.

## V

[¶ 31] The defendants contend the "trial court's finding breach of warranty against Coachmen was clearly erroneous," because Coachmen complied with its respon-

sibility under the warranty and the warranty excluded coverage for incidental and consequential damages. The trial court instructed the jury about express and implied warranties, the warranty of merchantability, and exclusions and disclaimers of warranties. The defendants do not argue those instructions were erroneous. Fodes testified Coachmen's warranty was not delivered to them. Viewing the evidence in the light most favorable to the verdict, we conclude there is substantial evidence to support the verdict for breach of implied warranties and for incidental and consequential damages.

## VI

[¶ 32] Because of our resolution of the issues raised by the defendants in their appeal, we need not address Fodes' claim on cross-appeal the trial court erred in not allowing their expert mechanic to testify about defects in the motor home.

## VII

[¶ 33] The defendants argue the trial court abused its discretion in awarding Fodes attorney fees, because the court failed to identify the legal basis for the award and failed to separate the fees incurred for the breach of warranty claim from those incurred for the revocation of acceptance claim.

[¶ 34] Absent statutory authority, the "American Rule" requires each party to a lawsuit to bear its own attorney fees. *Duchscherer v. W.W. Wallwork, Inc.*, 534 N.W.2d 13, 16 (N.D.1995). Fodes sought attorney fees under the fee-shifting provisions of the Magnuson–Moss Federal Trade Commission Improvement Act. *See* 15 U.S.C.A. § 2310(d). *See also Troutman* at 925. Setting the amount of reasonable attorney fees under a federal fee-shifting statute is largely within the discretion of the trial court. *Duchscherer* at 16; *see Troutman* at 925. An award of attorney fees will not be set aside on appeal absent an abuse of discretion. *Duchscherer* at 16. A trial court abuses its discretion if it acts in an arbitrary, unconscionable, or unreasonable manner, or

---

**2.** This instruction is contrary to *Welken v. Conley,*     252 N.W.2d 311, 315–16 (N.D.1977).

if it misinterprets or misapplies the law. *Duchscherer* at 16.

[¶ 35] When calculating attorney fees for prevailing parties under a federal fee-shifting statute, the trial court must first calculate a presumptively correct "lodestar" figure based upon the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Duchscherer* at 16–17. The calculation of the lodestar figure does not end the analysis, and the presumptively reasonable amount may be varied depending upon other considerations. *See Duchscherer* at 17–20.

[¶ 36] Here, in the limited remand, the trial court initially set a briefing schedule for deciding the amount of attorney fees. After Fodes submitted documentation to support their claim for more than $27,000 in attorney fees, the court "ignore[d] the prior briefing schedule" and awarded Fodes their requested attorney fees. Simply because this Court's limited remand ordered an "expedited decision" on attorney fees does not mean the defendants were not entitled to respond to Fodes' request for attorney fees. The fundamental requirements of due process contemplate adequate notice and a fair opportunity to be heard. *See Holzer v. Jochim*, 557 N.W.2d 57, 59 (N.D.1996). We conclude the trial court's failure to allow the defendants an opportunity to respond to Fodes' documentation of attorney fees was arbitrary and unreasonable. We therefore reverse the award of attorney fees and remand for reconsideration of the amount of attorney fees under the procedure outlined in *Duchscherer*.

## VIII

[¶ 37] We affirm the judgment, reverse the award of attorney fees and remand for reconsideration of the amount of attorney fees.

[¶ 38] VANDE WALLE, C.J., and MESCHKE, NEUMANN and MARING, JJ., concur.