# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2019 ND 306

Richard Palmer and Angela Palmer,     Plaintiffs and Appellees

  v.

Gentek Building Products, Inc.,     Defendant and Appellant

No. 20180450

Appeal from the District Court of Williams County, Northwest Judicial District, the Honorable Paul W. Jacobson, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by VandeWalle, Chief Justice.

Lisa M. Six (argued) and Garth H. Sjue (on brief), Williston, ND, for plaintiffs and appellees.

Brian D. Schmidt (argued) and Scott K. Porsborg (on brief), Bismarck, ND, for defendant and appellant.

## Palmer v. Gentek Building Products, Inc.
## No. 20180450

**VandeWalle, Chief Justice.**

[¶1]    Gentek Building Products, Inc. ("Gentek") appealed a judgment entered after a jury awarded Richard and Angela Palmer damages of $10,791, plus interest. Gentek also appealed an order awarding attorney fees of $80,379 to the Palmers, and taxation of costs and disbursements. We conclude the district court did not err in holding the Palmers were not bound by the federal district court's final order and judgment approving a class action settlement in *Eliason v. Gentek Bldg. Prods., Inc.*, No. 1:10cv2093, 2013 WL 12284495 (N.D. Ohio Aug. 1, 2013) ("*Eliason*"). We further conclude, however, that the court erred in its award of attorney fees and in not ruling on Gentek's objection to costs and disbursements. We affirm the judgment, but we reverse the order awarding attorney fees and taxation of costs and disbursements, and remand for further proceedings.

I

[¶2]    In 2003, the Palmers purchased and installed "Driftwood" steel siding from Gentek on their home in Williston. Gentek provided a lifetime limited warranty for the siding. In September 2011, the paint began to peel on the siding installed on the south side of the home. In January 2012, the Palmers submitted a warranty claim to Gentek. On January 23, 2012, Gentek offered the Palmers the option of either a cash settlement or replacement with a substitute siding under the warranty, since Gentek had discontinued producing the type of siding originally installed. While the Palmers opted to have their siding replaced with a substitute, Gentek had difficulty finding a contractor willing to perform the warranty work due to the oil boom in the area.

[¶3]    The Palmers were not alone in their claims of paint defects in Gentek's siding, in that thousands of others also experienced delaminated paint and filed warranty claims with Gentek, resulting in a class action lawsuit being filed in the United States

District Court for the Northern District of Ohio. *See Eliason*, No. 1:10cv2093, 2013 WL 12284495 (N.D. Ohio Aug. 1, 2013). In August 2013, the federal district court in *Eliason* entered a final order and judgment approving a class action settlement. *Id.*

[¶4]    In October 2014, the Palmers commenced this action against Gentek, alleging Gentek breached their warranty by failing to replace the Palmers' defective steel siding and seeking costs, disbursements, and attorney fees under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d). Gentek moved the district court for summary judgment before trial, asserting that the *Eliason* final order and judgment approving a class-action settlement barred the Palmers' claim as a matter of law. The court denied Gentek's initial summary judgment motion in July 2015 and denied its renewed motion in July 2017. The court essentially held the Palmers were not bound by the *Eliason* judgment because the federal court in *Eliason* did not acquire personal jurisdiction over the Palmers to make them parties. The court held that while the Palmers were known to Gentek, no evidence showed they had been given "individual

notice" under Fed.R.Civ.P. 23(c)(2)(B)[1] for reasonably identifiable class members in class actions under Fed.R.Civ.P. 23(b)(3).

[¶5]    The Palmers moved for partial summary judgment on liability, which the district court granted, and the case proceeded to trial on damages. In September 2018, the court held a two-day trial on the Palmers claim for damages. The jury subsequently entered a verdict in the Palmers' favor and awarded $10,791 in damages plus six percent interest, accruing from February 20, 2012. The court awarded the Palmers $80,379 in attorney fees, in addition to their costs for procuring an appraisal expert and disbursements.

## II

[¶6]    Gentek argues that in denying their summary judgment motions, the district court erred in ruling the Palmers were not class members and their claim was not barred and in holding the court had jurisdiction over the dispute. Gentek argues the

---

[1]Rule 23(c)(2)(B), Fed.R.Civ.P. (effective December 1, 2009), provided:
(2) Notice.
> . . . .
> (B) For (b)(3) Classes. For any class certified under Rule 23(b)(3), the court *must* direct to class members the best notice that is practicable under the circumstances, *including individual notice to all members who can be identified through reasonable effort*. The notice must clearly and concisely state in plain, easily understood language:
>> (i) the nature of the action;
>> (ii) the definition of the class certified;
>> (iii) the class claims, issues, or defenses;
>> (iv) that a class member may enter an appearance through an attorney if the member so desires;
>> (v) that the court will exclude from the class any member who requests exclusion;
>> (vi) the time and manner for requesting exclusion; and
>> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

(Emphasis added.)

court lacked jurisdiction over the Palmers' state court action because it was barred by the final order and judgment in *Eliason*.

[¶7]    Rather than the district court's jurisdiction, however, the dispositive issue in this case is the extent to which the Palmers may collaterally attack the final class action judgment entered by the federal court in *Eliason*.  Put another way, what is the scope of our review for the Palmers' challenge on due process grounds to the binding effect of the federal district court's final order and judgment in *Eliason*.

[¶8]    In discussing collateral attack of a final judgment in a class action, one noted treatise explained:

> A final judgment in a class action can bind absent class members only if it was rendered consistent with the requirements of due process. If an individual class member seeks to re-litigate the claims or issues resolved by a class action in later litigation and is met with the affirmative defense that her claims are precluded by the class judgment, she may therefore attempt to escape the binding effect of the class judgment by arguing that the judgment was rendered without due process.  This is referred to as a "collateral attack" on the judgment, as distinguished from an appeal, which is a "direct attack" on the judgment.
>
> The forum entertaining a challenge to the binding effect of the class action judgment must initially determine the extent to which it will examine the judgment for one of these alleged constitutional defects. The question is a perplexing one because the class action court itself will have necessarily made findings as to each of the due process concerns (notice, opportunity to be heard, opportunity to opt out, and adequate representation).  The party collaterally attacking the judgment is therefore asking for a *re*-evaluation of one or more of those issues.
> . . .
> Most often the class member who wishes to collaterally attack the judgment never herself appeared in the class action court to press her due process concerns. . . . [W]hat is unique to the class action, . . . is that even if the new litigant did not herself contest these issues in the class action forum, that court nonetheless necessarily made findings on the relevant due process issues as part of the class action process. The collateral forum is therefore *always* in the position of *re*-examining something the class action court has already examined, although the class action court undertook that prior examination after presentation by different adversaries or without adversarial presentation.

6 *Newberg on Class Actions* § 18:37 (5th ed. June 2019 Update) (footnotes omitted).

[¶9]    Generally, it is well established that "a party seeking to avoid the binding effect of a prior judgment is entitled to collaterally attack the judgment on the grounds that the rendering court had no personal jurisdiction over him or her at the time the judgment was rendered." *Lamarque v. Fairbanks Capital Corp.*, 927 A.2d 753, 760 (R.I. 2007); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 805 (1985) ("[A] judgment issued without proper personal jurisdiction over an absent party is not entitled to full faith and credit elsewhere and thus has no res judicata effect as to that party."); *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 482 (1982) ("A State may not grant preclusive effect in its own courts to a constitutionally infirm judgment, and other state and federal courts are not required to accord full faith and credit to such a judgment."). The court in *Lamarque* further explained why collateral attacks on class action judgments present a "distinct problem from attacks on other types of judgments":

> This is so because the process due absent members of a class action suit—necessary to bind them to the judgment—has been a somewhat elusive concept. *See Hansberry v. Lee*, 311 U.S. 32, 41, 61 S.Ct. 115, 85 L.Ed. 22 (1940) ("[T]o an extent not precisely defined by judicial opinion, the judgment in a 'class' or 'representative' suit, to which some members of the class are parties, may bind members of the class or those represented who were not made parties to it."). However, in *Shutts*, the United States Supreme Court set forth some rather clear criteria with respect to one particular type of class action—the type at issue in this case: class actions specifically certified under Rule 23(b)(3) of the Federal Rules of Civil Procedure. *Shutts* involved a class action brought in Kansas state court in which the plaintiff class sought to collect interest on royalty payments that they alleged had been illegally delayed by the defendant, a Delaware corporation. *Shutts*, 472 U.S. at 799, 105 S.Ct. 2965. The trial court entered judgment for the plaintiff class, and the Supreme Court of Kansas affirmed, casting aside the defendant's argument that the certifying state court could not adjudicate the claims of absent members of the plaintiff class because there were not sufficient minimum contacts between the state and each of those plaintiffs to meet the criteria for personal jurisdiction under *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The Supreme Court agreed with the Supreme Court of Kansas and held that the Due Process Clause protects an absent class plaintiff "even though that plaintiff may

5

not possess the minimum contacts with the forum which would support personal jurisdiction over a defendant." *Shutts*, 472 U.S. at 811, 105 S.Ct. 2965. Minimal due process, the Court held, requires that absent class plaintiffs:

> "must receive notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel. The notice must be the best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' * * * The notice should describe the action and the plaintiffs' rights in it. Additionally, we hold that due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court. Finally, the Due Process Clause of course requires that the named plaintiff at all times adequately represent the interests of the absent class members." *Id.* at 812, 105 S.Ct. 2965[.]

Thus, with its decision in *Shutts*, the Court effectively hewed a path with respect to the requirements for asserting personal jurisdiction over absent members of a class action suit certified under Rule 23(b)(3). In a nutshell, once the *Shutts* due process requirements are met, all absent members who do not opt out are bound by the judgment in that suit. Significantly, however, the Court's holding in *Shutts* did not directly resolve the narrow issue presented in this case; the extent to which reviewing courts can entertain a collateral attack on a judgment on the grounds that the *Shutts* due process requirements were not satisfied by the certifying court in the prior class action.

*Lamarque*, 927 A.2d at 761-62 (footnotes omitted).

[¶10]  "[T]he scope of collateral due process review has become part of an open, and hotly litigated question among courts and scholars." *Gooch v. Life Inv'rs Ins. Co.*, 672 F.3d 402, 420 (6th Cir. 2012) (quotation marks omitted); *see also Hospitality Mgmt. Assocs., Inc. v. Shell Oil Co.*, 591 S.E.2d 611, 618-19 n.11-12 (S.C. 2004). Courts differ on the "scope of collateral review of a foreign court's conclusions regarding due process issues, such as sufficiency of notice and adequacy of representation in class-action lawsuits." *Moody v. Sears Roebuck & Co.*, 664 S.E.2d 569, 580 (N.C. Ct. App. 2008). "Courts and commentators often state that there are two general approaches to this procedural question—sometimes labeled 'limited

review' and 'substantive review.'" 6 *Newberg on Class Actions* § 18:37 (additionally suggesting a third approach labeled the "one bite by anyone approach").

[¶11] In a "limited review," some courts hold "the reviewing court may not 'reconsider [ ] . . . the merits of the claim or issue,' but rather may only consider whether absent class members' due process rights were 'protected by the adoption of the appropriate *procedures* by the certifying court,' in which case the original judgment is entitled to full faith and credit." *Moody*, 664 S.E.2d at 580 (quoting *Epstein v. MCA, Inc.*, 179 F.3d 641, 648-49 (9th Cir.1999)); *see also Fine v. Am. Online, Inc.*, 743 N.E.2d 416, 420-24 (Ohio Ct. App. 2000); *Lamarque*, 927 A.2d 753, 760-65 (R.I. 2007); *Hospitality Mgmt.*, 591 S.E.2d at 619. In a "substantive review," however, courts allow broader collateral review of the merits of the rendering court's due process determinations. *See Gooch*, 672 F.3d at 420; *Stephenson v. Dow Chem. Co.*, 273 F.3d 249, 257-59 (2d Cir.2001), aff'd in pertinent part by equally divided Court, 539 U.S. 111 (2003) (per curiam) (Stevens, J., not participating); *State v. Homeside Lending, Inc.*, 826 A.2d 997, 1016-17 (Vt. 2003).

[¶12] On the basis of our review of other courts' precedent on the issue of the scope of review, we adopt the "limited review" approach. This approach entails "an examination of procedural due process and nothing more. . . . More specifically, we must determine (1) whether there were safeguards in place to guarantee sufficient notice and adequate representation; and (2) whether such safeguards were, in fact, applied." *Lamarque*, 927 A.2d at 765 (quotation marks omitted) (quoting *Hospitality Mgmt.*, 591 S.E.2d at 619). We therefore limit our review to this two-prong test.

### III

[¶13] Gentek argues that under *Eliason*'s definitions the Palmers are class members because they purchased and installed Gentek steel siding on their home in 2003, the siding was covered by the Gentek warranty, and their claim in 2012 arose from paint peeling. Gentek argues their remedy was established in *Eliason*. Gentek contends the district court impermissibly reviewed *Eliason* and decided the Palmers were not

7

class members and the court had no power to overrule *Eliason*'s determination regarding the constitutionality and adequacy of the provided notice. Gentek contends that the Palmers' failure to receive "individual notice" does not disqualify the Palmers as class members. Gentek further asserts the Palmers knew about *Eliason* before filing this action.

[¶14] The Palmers respond that the district court did not err in concluding it had jurisdiction in this case because *Eliason* was not binding on the Palmers and had no preclusive effect on this case. They argue the court properly held that the Palmers could challenge the jurisdiction of the *Eliason* court over them; that the *Eliason* court did not acquire personal jurisdiction over them because they were not afforded the mandatory due process to which they were entitled; that without personal jurisdiction the *Eliason* decision was void as to the Palmers; that the decision did not have preclusive effect as to the Palmers in this case; and that without preclusive effect, res judicata does not apply. The Palmers assert they should have been given "individual notice" to be bound because they were known claimants to Gentek.

[¶15] In *Eliason*, No. 1:10cv2093, 2013 WL 12284495, *1 (N.D. Ohio Aug. 1, 2013), the final order and judgment approving class action settlement defined class members as "all persons, organizations, municipalities, corporations and entities that own property, whether commercial or residential, on which Gentek Steel Siding was applied during the period January 1, 1991 through March 15, 2013, that are covered by a Gentek Steel Siding warranty and which siding experienced Steel Peel." The final judgment stated that the court had "personal jurisdiction over all Settlement Class Members because adequate notice has been provided to them and because they have been provided the opportunity to exclude themselves from the Litigation[, and had] subject matter jurisdiction over this Litigation, including, without limitation, jurisdiction to approve the Settlement Agreement and to dismiss the Litigation on the merits and with prejudice." *Id.*

[¶16] Regarding the satisfaction of due process, the *Eliason* judgment stated:

> The Court finds that the mailing of the Class Notice to known Class Members and the publishing of the Class Notice as provided for by, and

8

undertaken pursuant to, the Preliminary Approval Order (i) constituted the best practicable notice to members of the Settlement Class under the circumstances, (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the Litigation and of the terms of the Settlement Agreement and their rights thereunder, including their rights to object to those terms or to exclude themselves from the proposed Settlement and to appear at the Fairness Hearing, (iii) was reasonable and constituted due, adequate and sufficient notice to all persons entitled to be provided with notice, and (iv) fully complied with the requirements of the United States Constitution, the Federal Rules of Civil Procedure and the Rules of the Court.

*Id.* at *3. The judgment states that the settlement class counsel and the class representatives had adequately represented the settlement class throughout this litigation. *Id.* The judgment further provides, "The terms and provisions of the Settlement Agreement have been entered into in good faith and are hereby fully and finally approved as fair, reasonable and adequate as to, and in the best interests of Defendants and Settlement Class Members and in full compliance with all applicable requirements of law, including constitutional due process." *Id.*

[¶17] The *Eliason* judgment dismissed all the class members' claims with prejudice and released Gentek "from any and all claims . . . liabilities . . . costs, expenses, attorneys' fees, damages, . . . of any basis or source . . . arising out of, or related in any way whatsoever to any of the facts . . . occurrences . . . omissions or failures to act which were or could have or might have been alleged . . . or which relate to the subject matter of the Class Action, regardless of upon what legal theory based, . . . including . . . breach of warranty . . . or of any state or federal statutes, rules or regulations." *Id.* Regarding its binding effect, the judgment stated:

> The terms of the Settlement Agreement and of this Final Order and Judgment, including all exhibits thereto, shall be forever binding on the Class Representatives, Settlement Class Members, and Defendants, as well as the Released Parties and their heirs, executors and administrators, successors and assigns, and those terms shall have *res judicata* and other preclusive effect in all pending and future claims, lawsuits or other proceedings that assert claims that are encompassed within the Released Claims set forth in . . . the Settlement Agreement.

9

*Id.* at *4. In the judgment, the court retained continuing and exclusive jurisdiction over all parties, including the settlement class members, for purpose of enforcing and administering the settlement agreement and the mutual releases executed in connection with the settlement agreement. *Id.* The judgment also enjoined class members from filing any other lawsuit in any jurisdiction based on or relating to the claims and causes of actions in that litigation or the release. *Id.* at *5.

[¶18] On our review, the class action judgment contains provisions demonstrating the federal district court in *Eliason* had adequate safeguards in place to guarantee sufficient notice to the class members. Moreover, in the class action judgment the federal district court specifically found that due process had been satisfied. We conclude the issue of the propriety of the notice procedures was addressed in the federal district court. Under our limited review, therefore, we conclude the first prong has been met because safeguards were in place to guarantee sufficient notice and adequate representation. We next turn our attention to the second prong: whether those safeguards were in fact applied.

[¶19] "The interpretation of a court rule, like the interpretation of a statute, is a question of law." *In re N.A.*, 2016 ND 91, ¶ 7, 879 N.W.2d 82 (quoting *State v. Ebertz*, 2010 ND 79, ¶ 8, 782 N.W.2d 350). "When we interpret a rule or a statute, we apply the rules of statutory construction and look at the language of the rule or statute to determine its meaning." *Id.* "We give words their plain, ordinary, and commonly understood meaning and construe the statute or rule as a whole." *Id.*

[¶20] The plain language of Fed.R.Civ.P. 23(c)(2)(B) states that "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." We have said the word "must" in a statute or rule normally indicates a mandatory duty. *See Brock v. Price*, 2019 ND 240, ¶ 19; *James Valley Grain, LLC v. David*, 2011 ND 160, ¶ 12, 802 N.W.2d 158. There is no dispute that the Palmers either were known to or could be reasonably identified as class members by Gentek. The Palmers submitted a warranty claim to Gentek in January 2012; Gentek offered

10

the Palmers the option of either a cash settlement or replacement with a substitute siding under the warranty on January 23, 2012; and the final order and judgment approving the class action settlement in *Eliason* was entered on August 1, 2013.

[¶21]   The Palmers have maintained throughout these proceedings that they did not receive any "individual notice" of the class action required under Fed.R.Civ.P. 23(c)(2)(B).  We acknowledge Gentek's argument that the mere fact the Palmers did not "receive" the "individual notice" may alone be insufficient to establish the class action judgment safeguards were not applied for purposes of the second prong in our limited review.  However, during oral argument to this Court, Gentek also conceded that the required "individual notice" was not provided to the Palmers.

[¶22]   Under our limited review, we conclude the second prong has not been met in this case because the safeguards in place to guarantee sufficient notice and adequate representation were in fact not applied with regard to the Palmers.  Under these narrow facts and circumstances, therefore, we hold the district court did not err in concluding the Palmers were not bound by the *Eliason* class action judgment, albeit for a different reason, and in allowing the case to proceed to trial.  *See Myers v. State*, 2017 ND 66, ¶ 10, 891 N.W.2d 724 (stating this Court on appeal may affirm a district court's decision that reached the right result under the wrong reasoning).  We affirm the judgment awarding the Palmers damages of $10,791, plus interest.

IV

[¶23]   Gentek argues the district court abused its discretion by awarding the Palmers $80,379 in attorney fees when the jury awarded the Palmers $10,791 in damages.

[¶24]   In *Fode v. Capital RV Ctr., Inc.*, 1998 ND 65, ¶¶ 34-35, 575 N.W.2d 682, this Court specifically addressed awarding attorney fees under the Magnuson-Moss Warranty Act's fee shifting provisions:

> Absent statutory authority, the "American Rule" requires each party to a lawsuit to bear its own attorney fees. *Duchscherer v. W.W. Wallwork, Inc.*, 534 N.W.2d 13, 16 (N.D. 1995). Fodes sought attorney fees under the fee-shifting provisions of the Magnuson-Moss Federal Trade Commission Improvement Act. *See* 15 U.S.C.A. § 2310(d). *See*

11

*also Troutman*[*v. Pierce, Inc.*, 402 N.W.2d 920, 925 (N.D. 1987)]. Setting the amount of reasonable attorney fees under a federal fee-shifting statute is largely within the discretion of the trial court. *Duchscherer* at 16; *see Troutman* at 925. An award of attorney fees will not be set aside on appeal absent an abuse of discretion. *Duchscherer* at 16. A trial court abuses its discretion if it acts in an arbitrary, unconscionable, or unreasonable manner, or if it misinterprets or misapplies the law. *Duchscherer* at 16.

When calculating attorney fees for prevailing parties under a federal fee-shifting statute, the trial court must first calculate a presumptively correct "lodestar" figure based upon the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Duchscherer* at 16-17. The calculation of the lodestar figure does not end the analysis, and the presumptively reasonable amount may be varied depending upon other considerations. *See Duchscherer* at 17-20.

[¶25] Gentek initially argues that Magnuson-Moss does not control damages for breach of a "limited" written warranty. Courts have held, however, that 15 U.S.C. § 2310 does not limit its application to either full or limited warranties, so as to preclude an award of attorney fees to a prevailing party. *See Milicevic v. Fletcher Jones Imps., Ltd.*, 402 F.3d 912, 917-19 (9th Cir. 2005); *Pierce v. Catalina Yachts, Inc.*, 2 P.3d 618, 625-26 (Alaska 2000); *see also Leavitt v. Monaco Coach Corp.*, 616 N.W.2d 175, 185-87 (Mich. Ct. App. 2000); Dee Pridgen & Richard M. Alderman, *Consumer Protection and the Law* § 14:21 (November 2018 Update) ("Contractual provisions excluding consequential damages do not preclude the recovery of attorney's fees under the Magnuson-Moss [Act], even though such fees might be characterized as incidental or consequential damages under state law."). Moreover, we note this Court authorized an award of attorney fees in *Fode*, 1998 ND 65, ¶¶ 34-36, 575 N.W.2d 682, which also involved a limited warranty. We reject Gentek's argument the district court did not have authority to award attorney fees in this case.

[¶26] Gentek further argues, however, that the district court abused its discretion by awarding an unreasonable amount of attorney fees. Gentek essentially contends the court made conclusory statements to support its attorney fee award in response to Gentek's assertions that the submitted billings for Palmers' attorneys contained

entries reflecting duplicative or unnecessary work and that the Palmers had not prevailed on all of their issues. We agree.

[¶27] Here, the district court sufficiently explained that the Palmers had in fact prevailed on their claim under the Magnuson-Moss Warranty Act and that, while the Palmers did not recover on all of their issues concerning damages, their damages issues were intertwined so as to preclude a reduction on those grounds. The court, however, did not adequately explain the purported duplicative or unnecessary work by multiple attorneys. This Court has said that a party "'cannot litigate tenaciously and then be heard to complain about the time necessarily spent' overcoming its vigorous defense." *Thompson v. Schmitz*, 2011 ND 70, ¶ 21, 795 N.W.2d 913 (quoting *Duchscherer*, 534 N.W.2d at 19 (citation omitted)). But, we have also emphasized that it is "essential that the prevailing party, and the court, if need be, exclude any hours that are excessive, redundant, or otherwise unnecessary." *City of Medora v. Golberg*, 1997 ND 190, ¶ 22, 569 N.W.2d 257 (citing *Duchscherer*, at 19).

[¶28] In addressing Gentek's assertions of duplicative or unnecessary work, the district court merely adopted the Palmers' argument, stating it is not unexpected that multiple members of the firm would contribute to the representation and "courtesy reductions" were also factored into the billings. Rather than first calculating a presumptively reasonable amount, the court appears to have begun its analysis in considering the submitted billings as a starting point and deemed the fees reasonable. This does not comport with our case law, and the court has failed to show its calculation of a presumptively reasonable amount for this Court to review on appeal.

[¶29] We therefore conclude the district court abused its discretion by failing to first calculate a presumptively correct "lodestar" figure, based upon the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate, and abused its discretion in failing to sufficiently address the excessive, redundant, or unnecessary hours as asserted by Gentek. *See Fode*, 1998 ND 65, ¶¶ 34-36, 575 N.W.2d 682; *Duchscherer*, 534 N.W.2d at 16-20. As discussed, while the lodestar figure calculation does not end the analysis, the presumptively reasonable amount

may be varied based on other considerations. *Duchscherer*, at 16-20. We reverse the order awarding attorney fees and remand for reconsideration of the amount of attorney fees under the procedure outlined in *Fode* and *Duchscherer*.

V

[¶30] Gentek argues the district court abused its discretion in awarding costs for an expert who was never used. Gentek asserts the court allowed for taxation of costs and disbursements, including expert fees, with no explanation as to why the fees were reasonable, merely signing off on the Palmers' statement of costs and disbursements. While Gentek objected to the award, the court provided no explanation explaining its rationale for awarding the fees for procuring an expert appraisal that Gentek contends added "nothing to the case."

[¶31] Rule 54(e)(2), N.D.R.Civ.P., provides that if objections to costs are filed, "the clerk must promptly submit them to the judge who ordered the judgment. The court by ex parte order must fix a time for hearing the objections." *See, e.g., Brock*, 2019 ND 240, ¶¶ 19-20 (reversing costs and disbursements award and remanding for a hearing on objections). However, "[u]nless otherwise directed by the court, the parties may waive the right to a hearing and submit written argument instead within a time specified by the court." N.D.R.Civ.P. 54(e)(2).

[¶32] In its objection to the taxation of costs and disbursements, Gentek specifically stated that it "d[id] not request a hearing." The district court does not appear to have ruled on the objection. Nevertheless, because we are remanding to the district court for a reconsideration of its award of attorney fees, we also reverse the court's award of costs and disbursements for the court to address Gentek's objection to the taxation of costs and disbursements.

VI

[¶33] We have considered Gentek's remaining arguments and conclude they are either unnecessary to our decision or without merit. The judgment is affirmed, the

14

order awarding attorney fees and taxation of costs and disbursements are reversed, and the case is remanded for reconsideration of attorney fees and to address Gentek's objection to costs and disbursements.

[¶34]   Gerald W. VandeWalle, C.J.
        Daniel J. Crothers
        Bradley A. Cruff, D.J.

[¶35]   The Honorable Bradley A. Cruff, D.J., sitting in place of McEvers, J., disqualified.


      **Tufte, Justice, dissenting in part.**

[¶36]   I agree with the thorough opinion of the Chief Justice except as to its application of the second prong of the limited review test it adopts. As to that portion, I respectfully dissent.

[¶37]   I agree the federal district court in the *Eliason* class action adopted adequate procedures to safeguard due process for absent class members. Majority, at ¶ 18. The procedures adopted in *Eliason* included mailing to known class members and publishing of the class notice to apprise class members of the litigation, the terms of the settlement agreement, and their rights to object or opt out. The issue of whether these safeguards were applied was also addressed in the federal district court. Majority, at ¶ 16. Although the Palmers assert they were known class members who did not receive individual notice of the class action, and Gentek conceded at oral argument that individual notice was not provided to the Palmers, our review of the *Eliason* judgment is strictly limited to a search for procedural error. The procedures in place fairly protect the interests of both participating and absent class members. *Lamarque v. Fairbanks Capital Corp.*, 927 A.2d 753, 762 (R.I. 2007). "[T]here has been a failure of due process only in those cases where it cannot be said that *the procedure adopted*, fairly insures the protection of the interests of absent parties who are to be bound by it." *Hansberry v. Lee*, 311 U.S. 32, 42 (1940) (emphasis added). To address the Palmers' specific due process argument goes beyond the properly

15

narrow scope of review for a North Dakota court reviewing a foreign class action judgment. The Palmers' argument is best addressed to the federal district court that rendered the judgment. *Lamarque*, 927 A.2d at 766-67.

[¶38]   Jerod E. Tufte
          Jon J. Jensen